UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON

MT. HAWLEY INSURANCE COMPANY,

       Intervenor Plaintiff,

v.

FELMAN PRODUCTION, INC.,

       Plaintiff,

v.                                Case No. 3:09-cv-00481

INDUSTRIAL RISK INSURERS,
WESTPORT INSURANCE COMPANY, and
SWISS REINSURANCE AMERICA CORPORATION,

       Defendants.

## O R D E R

On April 8, 2010, the undersigned conducted a hearing on various discovery disputes. All parties appeared by lead and local counsel.

**Defendants' Motion to Compel Plaintiff to Identify
by Bates Number which Electronically Stored Information
Responds to each of IRI's Document Requests or, in the
Alternative, for the Appointment of a Special Master (# 197)**

Pursuant to Federal Rule of Civil Procedure 53(a)(1)(C), the undersigned **FINDS** that pretrial matters can be effectively and timely addressed by an available magistrate judge of this District. Accordingly, it is hereby **ORDERED** that the defendants' motion for the appointment of a special master is denied.

Defendants' motion to compel Felman to identify by Bates

number, etc. concerns a massive production of documents by Felman which included irrelevant and nonresponsive pages, all of which were marked "Confidential."   By Memorandum Opinion and Order entered March 25, 2010 (# 297), the undersigned found that Felman's use of the "Confidential" marking on all pages violated Local Rule 26.4 and the Protective Order (# 24).   Felman's Certification of Compliance (# 301) indicates that Felman is reviewing its production of documents to remove irrelevant material and to reconsider the "Confidential" designation.

Prior to the hearing, IRI and Felman submitted their positions as to the appropriate remedies and sanctions (## 307, 313).   At the hearing, the parties discussed the search protocol used by Felman and the remedies and sanctions to be imposed for Felman's violation of Local Rule 26.4 and the Protective Order.   The parties and the Court agree that, at a minimum, Felman must complete its re-review of its production of data, removing irrelevant material and reconsidering the affixing of the "Confidential" designation. Felman will not change the Bates numbers.   The Court directed the parties to consult with each other to agree on a method of efficiently and economically designating which documents are irrelevant and nonresponsive and which documents are believed by Felman, in good faith, to be "confidential," whether or not that particular term is used.

Defendants assert that the appropriate remedies and sanctions

2

are:

1.   Deeming Felman to have waived any assertion of confidentiality as to any document.  In the alternative, Felman should re-produce its documents, using the same Bates numbers, with proper "Confidential" designations, and pay for the costs incurred by the IRI defendants to process and upload Felman's original document production, to delete old document images and to replace them with new images.

2.   Staying discovery until Felman has corrected its original production of documents and the new production is successfully uploaded and integrated into the IRI defendants' document database.

3.   Requiring Felman to pay a monetary sanction to the Court.

4.   Ordering Felman to reimburse the IRI defendants for the expenses, including attorneys' fees, associated with preparing and filing that portion of the motion to compel (# 197) related to Felman's violation of the protective order.  (# 307, at 7-8.)

Felman contends that it began an individual document review on March 8, to identify those documents which are either not relevant or not confidential and that this is the only appropriate remedy under the circumstances.  (# 313, at 2-3, 8-11.)  It denies that it acted in bad faith, having detailed its efforts to produce ESI. Id. at 3-7, Ex. A.  Felman asserts that the defendants have not shown that they suffered any prejudice as a result of the over-designation of documents.  Id. at 11-12.

3

The Court declines to deem Felman's over-designation to be a waiver of confidentiality, denies the defendants' request to be reimbursed for its costs related to processing the documents, denies a stay of discovery (discovery deadlines have previously been suspended and discovery is going forward), and declines to impose a sanction on Felman payable to the Court. It is hereby **ORDERED** that the defendants' Motion to Compel Plaintiff to Identify by Bates Number which Electronically Stored Information Responds to each of IRI's Document Requests is denied. It is further **ORDERED** that due to Felman's violation of Local Rule 26.4 and the Protective Order, Felman shall reimburse the defendants' reasonable expenses, including attorneys' fees relating to this motion. The defendants' affidavit of expenses shall be filed by **April 20, 2010**; Felman's response, which will include a statement as to responsibility for the conduct, shall be filed by **April 30, 2010**.

### Felman's Motion to Compel Responses to Third Set of Document Requests (# 202)

The document requests which are the subject of Felman's motion to compel are as follows:

> 15. All documents concerning whether any portion or all of the $5 million payment to Felman was allocated to Felman's property damage insurance claim, business interruption insurance claim and/or claim for extra expense.
>
> 16. All transactional and accounting records concerning the $5 million payment made to Felman, including but not limited to wire instructions, wire approvals, account balance updates, reserves updates, and all Communications

4

relating thereto.

27.  All documents concerning complaints filed or made against, or submitted to, Westport by state officials or private individuals between 2000 and the present, alleging bad faith, unfair trade practices and/or unlawful claims handling of a first party property damage, business interruption and/or extra expense claim in West Virginia.

28.  All documents concerning any business interruption loss or claim, between 2000 and the present, that remained unresolved more than one year after the date of loss.

29.  All documents concerning any business interruption loss or claim, between 2000 and the present, that remained unresolved six months after the date of the proof of loss.

1.  IRI's complete claims files concerning Felman's claim under the Policy, including but not limited to all files maintained by claims adjusters, claims examiners, district or regional offices, and the home office, and for each file, all file notes, diary entries, transaction records, activity updates, reports to or Communications with supervisors, reports to or Communications with IRI committees, reports to or Communications with claims or adjustment committees, reports to or Communications with Westport and/or Swiss Re, reports of consultants or experts, drafts or notes relating to reports of consultants or experts, and Communications with consultants or experts.

## Relationships among the defendants

Felman served virtually identical documents requests on IRI, Westport and Swiss Reinsurance.  The motion to compel is directed equally to all defendants, except for # 27 (Westport only) and # 1 (IRI only).  (# 203, at 3 n.2.)

The defendants responded in opposition (# 261), asserting that their production as to ## 15, 16, 28, 29 and 1 was appropriately

provided only by defendant IRI.  They explain that IRI, a joint underwriting association, issued the subject policy to Felman.  The policy was executed by Westport, a member of IRI.  IRI investigated and adjusted Felman's claim on behalf of Westport.  Swiss Reinsurance was a reinsurer under the policy.  According to the defendants, only IRI, not Westport and not Swiss Reinsurance, maintains documents concerning Felman's claim.  Similarly, they state that no employee of Westport or Swiss Reinsurance had any communications with Felman, or participated or had involvement in the adjustment, investigation or evaluation of Felman's claim.  (# 261, at 2 n.3.)  An affidavit of David Newkirk, Senior Vice President - Group Legal, of Swiss Re America Holding Corporation, which wholly owns defendants Westport and Swiss Reinsurance, confirms these relationships.  (# 261-2, Ex. B, ¶¶ 15-16, at 4-5.)

Felman's reply points out that Westport is the primary insurer under the Policy by its terms.  (# 284, at 4.)  Felman also notes that Gregory A. Steele, Managing Director and Executive Claims Manager for Swiss Re America Holding Corporation, executed an affidavit[1] concerning Westport's documents, thereby demonstrating that IRI, Westport and Swiss Reinsurance are "interrelated - and perhaps even interchangeable."  Id.

During the hearing, questions were raised as to the existence of Westport and Swiss Reinsurance America, their personnel, and

---

[1] (# 261-3, Ex. C.)

6

those who are responsible for their management.  Counsel for the defendants was not immediately able to answer all the questions.

$5 million payment (Request ## 15 and 16)

During the adjustment of its claim, Felman received $5 million as an advance payment from IRI.  In response to ## 15 and 16, IRI stated that it "has produced all documents responsive to th[ese] requests."  (# 203, at 3.)  Westport and Swiss Reinsurance responded to document requests 15 and 16 by stating that they have no responsive documents.  Id.

Felman contends that IRI's production is incomplete because IRI has shown neither the source of the money (other than a particular bank account) nor the effect of the payment on reserves nor internal accounting records.  Id. at 4.

IRI asserts that it produced additional documents when Judge Taylor ordered disclosure of reserves information (Order entered November 20, 2009, # 94), and that it was checking again for responsive documents.  (# 261, at 6.)  It contends that it produced documents which do contain information showing a change in reserves levels.  Id.

Felman's reply accuses IRI of engaging in "semantic gamesmanship," noting that IRI stated it "produced all accounting records in its claims file," (# 261, at 17), where presumably they are not maintained.  (# 284, at 2.)

At the hearing, counsel for the defendants insisted that they

had produced all records relating to the payment and that there had been an agreement between the defendants and Felman (which was then represented by a different law firm) that the payment would not be allocated.  It is hereby **ORDERED** that the motion to compel as to Request ## 15 and 16 is denied without prejudice.

Complaints against Westport, Delays (Request ## 27-29)

Felman complains that Westport's original response to Request # 27 was that it had "not located any documents responsive to this request."  (# 203, at 5.)  Felman notes that it identified five complaints filed with the Insurance Commissioner against Westport in West Virginia during the period in question.  Id. at 6.  In addition to information concerning three of the complaints, Felman seeks production of "informal complaints," and "complaints in lawsuits, arbitrations, or other proceedings."  Id. at 7.

Westport responds as follows:

> Westport has accurately and completely responded to Felman's Request No. 27.  Since 2000, Westport has received five consumer complaints filed in the West Virginia Office of the Insurance Commissioner.  As described in the Affidavit of David Newkirk, none of the complaints relate to Westport's handling of a first party claim.  Further, none of the complaints relate to a policy issued by IRI.  Since 2000, Westport has not received any informal complaints regarding the handling of a first party claim in West Virginia.  (Newkirk Aff, ¶¶ 12-14.)  There are no documents for Westport to produce.

(# 261, at 18-19; # 261-2, ¶¶ 12-13, at 3-4.)

Felman did not address Request # 27 in its Reply.

In Request ## 28 and 29, Felman seeks production of documents

8

relating to any business interruption loss or claim, without geographical limitation, between 2000 and the present, which was not resolved within six months after the date of the proof of loss, and within one year after the date of the loss.  Felman asserts that the documents are relevant to its Unfair Trade Practices Act, bad faith, and *Hayseeds*[2] claims, particularly the proof of habit, custom, usage or business policy.  (# 203, at 8.)

IRI's response to Request ## 28 and 29 reads as follows:

> IRI objects to this request because it is overbroad, oppressive, vague, ambiguous, unduly burdensome, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence.  IRI further objects to this request on the basis that it seeks information protected by the attorney-client privilege and the work product doctrine.

(# 203, at 8.)  The defendants' Response to Felman's motion argues that the requested documents are irrelevant and not discoverable. (# 261, at 6-9.)  They further contend that the requests are overbroad, oppressive and unduly burdensome.  Id. at 10-13. Defendant Westport resists the discovery because it did not adjust Felman's claim.  Id. at 13-15.

Felman's reply argues that the documents are relevant and that the defendants have not shown undue burden (# 284, at 5-9).

At the hearing, Felman requested, and the Court granted, leave to re-phrase Request ## 27 through 29 in light of additional

---

[2]  Hayseeds, Inc. v. State Farm Fire & Cas., 352 S.E.2d 73 (W. Va. 1986).

9

information and questions relating to the relationships and
responsibilities of the defendants.  It is hereby **ORDERED** that the
motion to compel as to the original phrasing of Request ## 27-29 is
denied.

IRI's complete claims files (Request # 1)

IRI says it produced all responsive, non-privileged documents,
but is "checking again."  The Court expressed concern about the
reported size of the defendants' privilege log and cautioned the
parties to confer and attempt to reach agreement on those
documents.  It is hereby **ORDERED** that the motion to compel is
denied without prejudice as to Request # 1.

### Felman's Motion to Compel Proper and Complete Production of Documents by Defendants (# 245)

In this motion, Felman alleges that Defendants' production of
electronically stored information ("ESI") is so fundamentally
flawed as to constitute a virtual failure to produce pursuant to
Federal Rules of Civil Procedure 34 and 37.  (# 246, at 1.)

The defendants admit that they experienced an error in
production, but that corrections were made.  (# 286, at 4-5.)  They
assert that the motion is moot and should be denied.  Id. at 2.

Felman's reply indicates that the defendants still have not
produced certain missing attachments to emails (# 311, at 2.)  At
the hearing, the defendants advised that they are providing
technical information to Felman and will continue to provide
assistance and software so that the missing documents can be

10

reviewed.  Felman also complains that the defendants should search data files of 24 individual custodians of ESI and produce their relevant material.  Id. at 3.  The Court directed the parties to answer each other's questions with respect to specific custodians.

It is hereby **ORDERED** that the motion to compel is denied without prejudice.

### Defendants' Motions to Compel and for Protective Order (# 283)

These motions were triggered by the defendants' receipt, through discovery, of a May 14, 2008 email from the Human Resource Manager at Felman, to Tom Sullivan and Gene Burd, attorneys at Marks Sokolov & Burd, LLC, outside counsel to Felman.  Mr. Burd replied, with a copy to Katerina Vatutina of Privat Intertrading Company.  (# 283, at 1-2; # 283-4 at 2.)  Defendants contend that the email is evidence of a fraudulent scheme by Felman executives and others to present and advocate a false proof of loss and insurance claim to Defendants relating to the failure of a transformer which rendered Furnace # 2 inoperable.  Id.  Defendants argue that the crime-fraud exception vitiates any confidential communication in the email and any related documents, that the attorney-client privilege was waived when the communication was disclosed to Ms. Vatutina, and that Felman failed to take reasonable precautions to prevent disclosure of allegedly privileged communications.  Id. at 2.

Felman has requested return of the May 14, 2008, email,

11

pursuant to Federal Rule of Civil Procedure 26(b)(5)(B) and Section H of the Stipulation Regarding the Discovery of Electronically Stored Information (# 47, at 6-7), noting that the email is listed on Felman's privilege log.  Felman's response argues that the disclosure was inadvertent, that IRI has misused the inadvertently produced document, that the crime-fraud exception does not apply, and that the attorney-client privilege was not waived.  (# 314.)

Felman has the burden to prove that the email is subject to the attorney-client privilege; the defendants have the burden of proving the applicability of the crime-fraud exception.  After considerable discussion at the hearing, it became clear that the parties lack sufficient information regarding these matters.

It is hereby **ORDERED** that the parties will brief these issues simultaneously.  The party with the burden of proof on an issue will file its brief on **April 21, 2010**; the opposing party's response will be filed on **May 3, 2010**; the reply will be filed on **May 10, 2010**.  Pending the briefing and the next hearing, the motions are taken under advisement.

### Reasonable Expenses, Including Attorneys' Fees Related to Motion to Compel (# 176) and Motion to Reconsider (# 240)

Counsel for defendant IRI filed applications for attorneys' fees (## 238, 312), pursuant to Orders entered February 24 and March 30, 2010.  At the hearing, Plaintiff's counsel took responsibility for advising Plaintiff's response to the motion to

12

compel and the filing of the motion to reconsider, neither of which were, in the undersigned's opinion, substantially justified. Plaintiff's counsel did not take issue with the affidavits of the defendants' counsel regarding their billing rates or hours spent. The Court finds that there are no other circumstances which make an award of expenses unjust.  Accordingly, it is hereby **ORDERED** that the applications are granted and on or before April 23, 2010, Plaintiff's counsel shall pay a total of $7,716.75 to Robins, Kaplan, Miller & Ciresi L.L.P.

The parties will consult with each other as to the next hearing date, which will occur during the week of May 10-14, 2010. Two days prior to the next hearing, the parties will compile an agenda for the hearing for the prompt, economical and efficient resolution of discovery disputes.  The parties will provide the agenda and brief letters outlining the parties' positions to the Court.

The Clerk is directed to transmit this Order to all counsel of record.

ENTER: April 9, 2010

Mary E. Stanley
United States Magistrate Judge

13