IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

FELMAN PRODUCTION, INC.,
a Delaware corporation,

                       Plaintiff,

v.                                         CIVIL  ACTION  NO.  3:09-0481

INDUSTRIAL RISK INSURERS,
an unincorporated association, et al.,

                       Defendants.

### ORDER

Pending before the Court is Plaintiff Felman Production, Inc.'s Objections to Magistrate's May 18, 2010 Order (Doc. #339).  For the reasons stated below, Felman's objections are **DENIED.**

### Background

This action is an insurance case, in which discovery has taken on a life of its own.  The proceedings have been especially adversarial, requiring significant involvement on the part of United States Magistrate Judge Mary E. Stanley.  This set of objections pertains to a decision made by Magistrate Stanley on May 18, 2010 (Doc. # 334).  The Order concerns, in relevant part, the admissibility of documents inadvertently produced by Felman as part of its e-discovery.

To date, the production and review of electronically stored information (ESI) has resulted in the considerable expenditure of time and money on the part of both parties, as well as a considerable expenditure of time on the part of the Court.  Defendants first requested the production of ESI on August 5, 2009.  The parties then proposed a protective order on August 10, 2009 (which

was entered by the Court August 11, 2009) and entered into a "Stipulation Regarding the Discovery of Electronically Stored Information" on September 28, 2009. The agreements were intended to protect the confidentiality of and privilege attached to the documents produced, meanwhile facilitating the discovery process. Despite the entry of the Protective Order and ESI Stipulation, however, discovery disputes ensued. Felman's e-discovery production did not begin until November 2009 and the vast majority of the production occurred in January 2010. Ultimately, Felman produced more than one million pages of ESI documents, all of which were marked "**CONFIDENTIAL**."

Felman admits that approximately 30% of the documents it produced by e-discovery are irrelevant. These documents include car and camera manuals, personal photographs, and other plainly irrelevant documents, including offensive materials. In the process of its e-discovery, Felman also produced nearly a thousand communications subject to attorney-client privilege. It has attempted to claw back a small percentage of these protected communications.

Plaintiff's objections to Magistrate Stanley's May 18, 2010 Order concern the inadvertent disclosure of two privileged communications: (1) a May 14, 2008 email from Felman's Human Resources Manager Dolzhkov Denys to outside counsel, Gene Burd; and (2) a set of additional documents (377), which were produced in the same manner as the May 14, 2008 email, and to which the company claims privilege.

The May 14, 2008 email was produced in the course of Felman's e-discovery. In the email, Felman allegedly: (1) admits that it did not have sales contracts in place that would require the use

of three furnaces,[1] and (2) seeks advice from counsel on whether to request that customers backdate contracts in order to produce this evidence for the purposes of its insurance claim. The parties agree that the May 14, 2008 email is subject to attorney-client privilege. It is also undisputed that at least two versions of the email were produced, inadvertently, by Felman in the course of ESI production. Therefore, the issues raised are: (1) whether Felman's inadvertent disclosure of the email resulted in a waiver of the attorney-client privilege, and (2) whether Defendants' subsequent use of the email was proper.

Defendants provide that they hired a thirty-lawyer team to sort through Felman's ESI production. Defendants discovered the May 14, 2008 email in early March 2010 and, within a week of discovery, on March 11, 2010, Defendants filed a motion to amend their answer to add counterclaims for fraud and breach of contract, attaching the email to the motion. In a footnote, Defendants state that the motion and its exhibits were filed under seal. *See* Doc. 265, n. 1. However, the documents were not filed under seal. Accordingly, on March 11, 2010, the May 14, 2008 email became part of the public record.

Felman provides that the March 11, 2010 motion to amend was the first time it received notice that it had inadvertently produced the May 14, 2008 email. On March 15, 2010, Felman requested that Defendants return or destroy all copies of the email. Defendants have not complied with this request.

---

[1] One of the highly contested issues in this case – possibly the most controversial – is the value of Felman's business interruption claim. Felman claims $39,000,000 in lost business; a figure that reflects the projected sale of an amount of silicon-manganese consistent with the simultaneous operation of three furnaces.

**The May 18, 2010 Order and Felman's Objections**

In pertinent part, Magistrate Stanley's May 18, 2010 Order concludes that: (1) although disclosure was inadvertent, Felman waived its attorney-client privilege claim to the May 14, 2008 email; and (2) assuming the same facts led to their disclosure, Felman waived their privilege to the additional 377 documents described above. Felman's waiver is based upon its failure to take reasonable precautions to prevent inadvertent disclosure prior to production.

Felman objects to the May 18, 2010 Order on three grounds. In its own words:

1. The May 18 Order commits legal error in that it finds that Defendants failed to comply with the parties' ESI Stipulation in this case and apparently also finds that Defendants simultaneously violated Rule 26(b)(5), but rather than imposing consequences for these violations, the May 18 Order instead holds that Defendants are entitled to benefit from their own noncompliance.

2. The May 18 Order, in finding that Felman waived the attorney-client privilege with respect to the May 14 e-mail and provisionally finding a waiver with respect to the 377 additional documents Felman inadvertently produced, is based on clearly erroneous factual conclusions.

3. The May 18 Order commits legal error in that it makes findings against Felman regarding the reasonableness of its efforts to rectify the inadvertent production that contravene the parties' ESI Stipulation and that are contrary to its finding that Felman satisfied Federal Rule of Evidence 502(b)(3).

**Standard of Review**

Felman moves for review pursuant to Federal Rule of Civil Procedure 72(a). The Rule provides:

> When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within 14 days ... The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law. Fed.R.Civ.Pro. 72(a).

"The Fourth Circuit has held that the 'clearly erroneous' standard is deferential and that findings of

fact should be affirmed unless the reviewing court's view of the entire record leave the Court with 'the definite and firm conviction that a mistake has been committed.'" *Asbury v. Litton Loan Servicing, LP*, 2009 WL 973095, at *1 (S.D. W.Va. April 9, 2009) (Chambers, J.) (quoting *Fed. Election Comm'n v. Christian Coal.*, 178 F.R.D. 456, 460 (E.D. Va. 1998) (quoting *Harman v. Levin*, 772 F.2d 1150, 1153 (4th Cir. 1985)); *United States v. United States Gypsum Co.,* 333 U.S. 364, 395 (1948) (same). "When ... review of a non-dispositive motion by a district judge turns on a pure question of law, that review is plenary under the 'contrary to law' branch of the Rule 72(a) standard." *Powershare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 15 (1st Cir. 2010) (citing cases and other authority). "This means that, for questions of law, there is no practical difference between review under Rule 72(a)'s 'contrary to law' standard and [a] de novo standard." *Id.*

**Analysis**

The Court will address the waiver issue first. Felman argues that the Magistrate Judge's finding of waiver is based on erroneous factual conclusions. Felman further argues that the May 18, 2010 Order committed legal error in finding that Felman's efforts to rectify its inadvertent disclosure were unreasonable, a factor considered in the five-factor test set forth in *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 259 (D. Md. 2008),[2] which the Magistrate Judge applied when determining that Felman's inadvertent disclosure resulted in waiver.

The Court disagrees with both objections. The standard of review for factual conclusions is highly deferential and the Court finds no clear error in the Magistrate Judge's determinations.

---

[2]"The ... test requires the court to balance the following factors to determine whether inadvertent production of attorney-client privileged materials waives the privilege: (1) the reasonableness of the precautions taken to prevent inadvertent disclosure; (2) the number of inadvertent disclosures; (3) the extent of the disclosures; (4) any delay in measures taken to rectify the disclosure; and (5) overriding interests in justice." *Victor Stanley*, 250 F.R.D. at 259.

Although inadvertently, Felman produced a massive amount of irrelevant documents and thousands of privileged communications. In light of this fact, the Court need not consider the details of Felman's pre-production document review process – or the unexplained technical glitch that led to the fourth volume of Felman's e-discovery being not properly screened for potentially privileged materials – to find that Felman's screening precautions were not reasonable. The ridiculously high number of irrelevant materials and the large volume of privileged communications produced demonstrate a lack of reasonableness. Consequently, the Magistrate Judge's conclusion to that effect is neither clearly erroneous nor contrary to law. To the contrary, as is suggested in the *Victor Stanley* balancing test, this Court finds that Magistrate Stanley was correct to judge the reasonableness of Felman's pre-production precautions and the question of waiver based on the results of the company's e-discovery. *See id.* (two of the five factors applied in *Victor Stanley* are (2) the number of inadvertent disclosures and (3) the extent of the disclosures).

Here, the number of inadvertently disclosed documents was enormous (approximately 30% of more than one million pages) and the number and extent of the attorney-client privileged communications disclosed was also very large (thousands of attorney-client protected communications were produced). These facts, standing alone, weigh heavily in favor of finding: (1) the precautions taken to avoid inadvertent disclosure were unreasonable, and (2) Felman's attorney-client privilege was waived. Moreover, neither of the additional *Victor Stanley* factors – the delay, or lack thereof, in taking measures to rectify the disclosure or the overriding interests in justice – are to the contrary.[3] Therefore, the Court **DENIES** Felman's objection to the Magistrate's finding

---

[3] *See also* Fed.R.Evid.502 (inadvertent disclosure does not waive a privilege if (1) the holder of the privilege took reasonable steps to prevent disclosure *and* (2) the holder promptly took reasonable steps to rectify the error); Fed.R.Evid.502 advisory committee's note ("The rule

of waiver on the grounds that her factual conclusions were clearly erroneous and **AFFIRMS** the finding of waiver.[4]

Next, the Court considers Felman's objection to the May 18, 2010 Order on the ground that Magistrate Stanley committed legal error in finding the company's efforts to rectify its inadvertent disclosure unreasonable, despite the fact that the Magistrate found that Felman complied with Federal Rule of Evidence 502(b)(3). Once notified of its inadvertent disclosure, Felman complied with the ESI stipulation and requested all copies of the document be returned or destroyed within 10 days. As a result, Felman argues that the Magistrate Judge committed legal error "in considering Felman's actions *after* being notified of its inadvertent disclosure," in finding that Felman's pre-disclosure efforts were unreasonable under Federal Rule of Evidence 502(b)(2). *See Pl.'s Objections* (Doc. # 339), at 12. Essentially, Felman argues that it was legal error to consider its post-notification conduct, when assessing the reasonableness of its pre-disclosure efforts. Felman

---

opts for the middle ground: inadvertent disclosure of protected communications or information in connection with a federal proceeding or to a federal office or agency does not constitute a waiver if the holder took reasonable steps to prevent disclosure *and also* promptly took reasonable steps to rectify the error.") (emphasis supplied). Although the advisory committee notes state that "[t]he rule does not require the producing party to engage in post-production review to determine whether any protected communication or information has been produced by mistake," *id.*, this limitation on the producing party's *post*-production duties does not relieve the producer from its duty to engage in reasonable *pre*-production screening. Further, "[t]he rule does require the producing party to follow upon on any obvious indications that a protected communication or information may have been produced inadvertently." *Id.* The Court finds the massive volume of documents produced inadvertently should have operated as an "obvious indication" of inadvertence.

[4]The Court notes that some of the "factual conclusions" identified by Felman as clearly erroneous may be more correctly regarded as mixed determinations of law and fact. *See Pl.'s Objections* (Doc. # 339), at 7. Consistent with the above discussion, insofar as these objections constitute objections to legal findings, the Court holds they are not contrary to law. *See* Fed.R.Civ.Pro. 72(a).

does not clearly connect this objection to the Magistrate Judge's ultimate finding that privilege is waived, however.

This Court finds that Felman misconstrues the May 18, 2010 Order in its objection. Magistrate Stanley conducted the Rule 502(b) analysis, assessing each element and finding Felman satisfied Rule 502(b)(3). This finding was not determinative of the Magistrate Judge's conclusion that Felman failed to satisfy Rule 502(b)(2), however. Although the Magistrate Judge recites some of Felman's post-notification conduct as support for its finding that pre-production precautions were unreasonable, Magistrate Stanley specifically reviews the steps the company took to avoid inadvertent disclosure and Felman's overproduction. In doing so, Magistrate Stanley concludes "the failure to test the reliability of keyword searches by appropriate sampling [was] imprudent," *see* Doc. 334, at 26; "the number of inadvertent disclosures ... underscores the lack of care taken in the review process," *id.*; and, ultimately, "[t]he May 14 email resonates throughout this case – a bell which cannot be unrung." *Id.* This Court agrees. Moreover, the Court finds these conclusions not contrary to law. Rather, the conclusions are consistent with the *Victor Stanley* test, in which the results of a producing party's inadvertence can and should be consider when determining whether waiver occurred, 250 F.R.D. at 259, and with Federal Rule of Evidence 502(b), under which an inadvertent party escapes waiver only if (1) the holder of the privilege took reasonable steps to prevent disclosure *and* (2) the holder promptly took reasonable steps to rectify the error. Fed.R.Evid. 502(b); *see also* note 3 *supra* (quoting advisory committee's notes). Consequently, the objection is **DENIED** and the finding of waiver **AFFIRMED.**

Finally, Felman objects to the May 18, 2010 Order, contending Magistrate Stanley committed legal error in finding that Defendants failed to comply with the claw back provision in

the ESI stipulation and Federal Rule of Civil Procedure 26(b)(5), yet allowing Defendants "to benefit from their own noncompliance." The Court **DENIES** the objection. In finding that Felman waived its attorney-client privilege, the Magistrate Judge is not entitling Defendants to any benefit of their *post*-waiver noncompliance. To the contrary, as discussed *supra*, the Magistrate Judge's finding that Felman, the holder, waived its attorney-client privilege to the documents inadvertently produced is based upon the application of the *Victor Stanley* balancing test and Federal Rule of Evidence 502(b). Based, primarily, on these tests, Magistrate Stanley found Felman failed to take reasonable *pre*-production precautions to avoid waiver. It is for this reason the privilege is waived and Defendants' post-production conduct does not alter this conclusion.[5] Accordingly, the objection is **DENIED.**

In conclusion, the Court **DENIES** Felman's objections and **FINDS** the Magistrate Judge was correct in holding Felman's attorney-client protection waived as to the May 14, 2008 email. Moreover, the Court finds that, insofar as any waiver of the privilege applied to any of the additional 377 documents Felman seeks to claw back is based on the same factual conclusions, as those contested here, waiver likely also occurred. This specific question, however, is to be further addressed by Magistrate Stanley.

---

[5]Moreover, Defendants failure to notify Felman of its inadvertence is not a ground upon which to deny waiver. As noted by Magistrate Stanley, there is no West Virginia rule or other binding authority that required Defendants to provide Felman with notice of its inadvertent disclosure before attaching the May 14, 2008 email to its motion to amend. The ABA's Model Rule of Professional 4.4(b) imposes such a duty, however, as recognized by Magistrate Stanley, the rule is not controlling.

The Court **DIRECTS** the Clerk to send a copy of this written Order to counsel of record and any unrepresented parties.

ENTER: July 23, 2010

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE