IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

FELMAN PRODUCTION, INC.,
a Delaware corporation,

                    Plaintiff,

v.                                          CIVIL ACTION NO. 3:09-0481

INDUSTRIAL RISK INSURERS,
an unincorporated association, et al.,

                    Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the Court is the defendants Industrial Risk Insurers and Westport Insurance Company's (hereinafter "Defendants") Motion For Leave to Amend Answer to Add Counterclaim for Fraud and Breach of Contract (Doc. #265). For the reasons stated below, the motion is **GRANTED.**

### Background

Plaintiff Felman Production, Inc. owns and operates a metals plant in New Haven, West Virginia, producing silicon-manganese for resale to steelmakers. Felman has operated the New Haven plant since early 2007. The plant houses three furnaces, Furnaces #2, #5, and #7, each of which is capable of independently smelting its silicon-manganese product. Historically, it appears Felman has operated two of its three furnaces at a time, selling a quantity of silicon-manganese consistent with the operation of two of the three furnaces running 24 hours a day, 7 days a week.

On February 23, 2008, Felman purchased a commercial property insurance policy for the

New Haven plant from Defendants. The policy, effective February 23, 2008, to February 28, 2009, covered property damage and business interruption loss. On or about April 27, 2008, a transformer supplying power to Furnace #2 at the plant failed. The failure rendered Furnace #2 inoperable, for an 8- to 9-month period. In May 2008, Felman submitted an insurance claim to Defendants based on the April 2008 failure. The claim consisted of: (1) a property damage claim for approximately $1,200,000, the expected cost to repair Furnace #2, and (2) a business interruption loss claim for approximately $39,000,000, the amount Felman expected to lose over the 8- to 9-month period the furnace would be disabled.

One of the highly contested issues in this case – possibly the most controversial – is the value of Felman's business interruption claim. Felman's $39,000,000 figure reflects its assertion that, during the period Furnace #2 was inoperable, it would have been able to (and/or had entered into sales contracts to) sell a quantity of silicon-manganese consistent with production from running all three furnaces, simultaneously. As support for its claim, Felman submitted a proof of loss, sworn to by company President Steven Pragnell, in August 2008. Additionally, Felman submitted: (1) a May 22, 2008 letter from Glencore Ltd., Felman's silicon-manganese broker, to Felman, which described "long term sale opportunities" for Felman and indicated that two companies (Nucor Steel and Gerdau Steel) were interested in establishing supply arrangements which would require production from all three furnaces; and (2) a February 2008 Agency Agreement, between Felman and Glencore, in which Glencore agreed to sell a quantity of silicon-manganese consistent with simultaneous production from all three furnaces.

Defendants claim that Felman's $39,000,000 claim is fraudulent. Accordingly, they seek to amend their answer to add counterclaims for fraud and breach of contract.

Felman opposes the amendment. Felman's primary argument against the amendment is that it is futile. In particular, Felman argues that amendment would be futile: (1) because Defendants cannot show justifiable reliance or actual damage, as is required by a fraud claim, *see, e.g.,* Syl. Pt. 1, *Lengyel v. Lint*, 280 S.E.2d 66 (W. Va. 1981), and (2) because the counterclaims duplicate an existing affirmative defense (the Sixteenth Affirmative Defense), in which Defendants claim that Felman's policy is void because "[it] made material misrepresentations or omissions in its application for insurance." *See Defs.' Am. Answer* (Doc. 268).

Defendants filed their motion to amend on March 11, 2010. The deadline for the amendment of pleadings set in the Amended Scheduling Order passed on February 10, 2010. *See* Doc. 171. Therefore, the Court must inquire into whether Defendants' motion to amend is timely, under the circumstances. Defendants claim the motion is timely because: (1) they only recently uncovered documentary evidence, specifically emails and other correspondence, to support their fraud claim[1] (a claim that must be plead with particularity), *see* Fed.R.Civ.Pro 9(b); and (2) the delay in Defendants' discovery of this evidence is attributable to Felman, and not a consequence of Defendants' carelessness or lack of diligence. Defendants assert they filed the instant motion within

---

[1]The documentary evidence Defendants point to is: (1) a May 9, 2008 email from Felman's Sales Manager Yuriy Petrenko to Glencore, in which Petrenko allegedly requests that Glencore "make up" evidence to submit in support of Defendants' insurance claim; (2) a May 14, 2008 email from Felman's Human Resources Manager Dolzhkov Denys to Felman's then-attorney, Gene Burd, in which Denys allegedly (a) admits that the company did not have sales contracts to sell an amount of product consistent with operating three furnaces and (b) seeks advice from Burd on whether to ask customers to backdate contracts and create such evidence; and (3) a May 21, 2008 letter from Petrenko to Glencore, in which Petrenko allegedly requests that Glencore provide Felman with a letter to present to the insurance company, which would show that Felman had sales opportunities consistent with the simultaneous operation of three furnaces. Taken together, Defendants argue these emails and letter are indicative of a fraudulent scheme to fabricate evidence to support Felman's inflated business interruption claim.

one week of becoming aware of the noted evidence of fraud. Further, Defendants proffer that this evidence was uncovered through prompt and diligent study of Felman's January 2010 e-discovery production; a production which included more than one million pages of documents.

## Standard of Review

When a motion to amend is filed after the deadline in the Rule 16(b) Scheduling Order, the motion is reviewed under the two-part test established in *Marcum v. Zimmer*, 163 F.R.D. 250, 254 (S.D. W.Va. 1995), and adopted by this Court in *Stewart v. Coyne Textile Services*, 212 F.R.D. 494, 496 (S.D. W.Va. 2003). According to that test,

> Once the scheduling order's deadlines for amendment of the pleadings has passed, a moving party first must satisfy the good cause standard of Rule 16(b). If the moving party satisfies Rule 16(b), the movant then must pass the tests for amendment under Rule 15(a)." *Marcum*, 163 F.R.D. at 254; *see also Stewart*, 212 F.R.D. at 496 (adopting *Marcum*'s two-step test); *id.* at 496 n. 1 (citing cases supporting adoption).

Rule 16(b)(4) of the Federal Rules of Civil Procedure provides that "a schedule may be modified only for good cause and with the court's consent." Fed.R.Civ.Pro. 16(b)(4). The touchstone of "good cause" under Rule 16(b) is the diligence of the party seeking amendment. *Marcum*, 163 F.R.D. at 255.

> Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.' Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. . . . Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. *Id.* at 254 (*quoting Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)).

If "good cause" is established, then a motion to amend is reviewed under Rule 15(a). Rule 15(a) establishes a liberal amendment policy. It provides that "[a] court should freely give leave when justice so requires." Fed.R.Civ.Pro. 15(a)(2). However, "[a]lthough *Rule* 15(a) provides for

4

liberal amendment the directive is not absolute ... if a plaintiff has unduly delayed seeking amendment and the delay is accompanied by prejudice, bad faith, or futility, amendment should be denied." *West Virginia Hous. Dev. Fund v. Ocwen Tech. Xchange, Inc.*, 200 F.R.D. 564, 567 (S.D.W. Va. 2001) (quoting *Smith v. United Parcel Serv., Inc.*, 902 F. Supp. 719, 721 (S.D.W. Va. 1995)) (internal quotations and bracket omitted) (emphasis in original); *see also Stewart*, 212 F.R.D. at 497 (the "analysis 'focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party'") (quoting *Marcum*, 163 F.R.D. at 254).

**Analysis**

Pursuant to *Marcum* and *Stewart*, the Court determines, first, whether Defendants have shown "good cause" for their delay in filing their motion to amend, and, second, whether the motion is futile or otherwise inappropriate under Rule 15(a).

I.  *Defendants have satisfied the Rule 16(b) "good cause" standard*

The "good cause" standard focuses, primarily, on the moving party's reasons to seek amendment. *West Virginia Hous. Dev. Fund*, 200 F.R.D. at 566 (citing *Marcum*, 163 F.R.D. at 254). It "focuses on the timeliness of the amendment and the reasons for its tardy submission." *Montgomery v. Anne Arundel County*, 182 F.App'x 156, 162 (4th Cir. 2006).

Federal Rule of Civil Procedure 9(b) provides that a fraud claim must be plead with particularity. Fed.R.Civ.Pro. 9(b). In order to properly assert a fraud claim (or counterclaim), the claimant must plead all the essential elements: (1) that the act claimed to be fraudulent was the act of the defendant or induced by him, (2) that the act was material and false, (3) that the claimant justifiably relied upon the defendant's misrepresentations, and (4) that the claimant suffered actual damage as a result of this reliance. *See Bluestone Coal Corp. v. CNX Land Resources, Inc.* 2007 WL 6641647, at

*5-6 (S.D. W.Va. Nov. 16, 2007) (Faber, J.); *Lengel*, 280 S.E.2d 66 at Syl. Pt. 1. Consequently, "[t]he circumstances required to be plead with particularity under Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Bluestone*, 2007 WL 6641647, at *6 (quoting *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 784 (4th Cir. 1999)). Rule 9(b) "allows conclusory allegations of defendant's knowledge as to the true facts and of defendant's intent to deceive." *Harrison*, 176 F.3d at 784. However, if the complaint does not include the time, place, and contents of the false representations, or the identity of the responsible person, then a fraud claim is subject to dismissal under Rule 12(b)(6). *See Bluestone*, 2007 WL 6641647, at *6 (citing *Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970, 980 (4th Cir. 1990)).

Although they were allegedly suspicious of the $39,000,000 claim early in the claims process, Defendants argue there is good cause for the delay in bringing their fraud claim, because they did not discover the evidentiary support for such a claim until early March 2010. Therefore, Defendants claim they could not have pled their fraud claim, with the required particularity, until early March. Further, Defendants argue there is good cause for amendment, because Felman is responsible for the delay in discovery, not Defendants. Defendants point out that the documentary evidence at issue was not produced until January 2010, despite Defendants' repeated requests for correspondence between Glencore and Felman during the claims process and, again, during litigation. Moreover, Defendants note that they were required to file motions to compel in order to obtain the relevant e-discovery, and that, when the relevant information was finally produced, Defendants were forced to employ a thirty-lawyer team to sort through the more than one million page "document dump," which consisted of large volumes of irrelevant material.

These facts do not support a finding of carelessness or lack of diligence on the part of Defendants.[2] Therefore, in light of Rule 16(b)'s focus on the diligence of the party seeking amendment, the Court finds there is good cause to grant the motion under the Rule. This is particularly true when the particularity requirement imposed by Rule 9(b) is taken into consideration. *See West Virginia Hous. Dev. Fund.*, 200 F.R.D. at 567 (party claiming fraud "should be permitted opportunity to review all the evidence responsive to its requests" before seeking amendment).

II.     *Amendment is appropriate under Rule 15(a)*

The Rule 15(a) analysis focuses on the conduct of the party seeking amendment *and* the prejudice to the opposing party. *See Stewart*, 212 F.R.D. at 497; *Marcum*, 163 F.R.D. at 254. Consequently, amendment may be denied, when the moving party has unduly delayed and this delay is accompanied by prejudice, bad faith, or futility. *West Virginia Hous. Dev. Fund.*, 200 F.R.D. at 567; *see also Franks v. Ross,* 313 F.3d 184, 193 (4th Cir. 2002). "[T]he decision whether to grant leave rests within the sound discretion of the district court, the federal rules strongly favor granting leave to amend[,]" however. *Medigen of Kentucky, Inc. v. Public Service Com'n of West Virginia*, 985 F.2d 164, 167-68 (4th Cir. 1993) (internal citation omitted).

Felman argues the motion to amend should be denied as futile. Specifically, Felman claims amendment would be fruitless because: (1) Defendants cannot establish justifiable reliance or actual damages, and (2) the proposed counterclaims replicate an existing defense.

The Court will not deny amendment on these grounds. Essentially, Felman's futility

---

[2]For the purpose of resolving this motion, the Court accepts as true Defendants' assertions that it employed a thirty-lawyer team to conduct document review; that this study was conducted promptly upon receipt of Felman's e-discovery; and that Defendants did not uncover the emails and/or letter relied upon in their amended answer until approximately one week before filing the instant motion.

7

argument asks the Court to delve into the merits of Defendants' fraud-based counterclaims. Felman asks the Court to weigh the evidence. It requests the Court consider metadata and the English proficiency of Yuriy Petrenko and Dolzhkov Denys. It asks the Court to conclude that neither the $5,000,000 advanced payment, nor the costs, fees and inconvenience associated with this litigation constitute actual damages. Further, the company asks the Court to find that Defendants' alleged reliance on Felman's purported misrepresentations is unjustifiable. These are questions for a jury, not for the Court.

Felman is correct that futility can be an appropriate basis upon which to deny a motion to amend. *See Franks*, 313 F.3d at 193 (A motion to amend "should be denied *only when* the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.") (emphasis in original). "Leave to amend, however, should only be denied on the ground of futility when the proposed amendment in clearly insufficient or frivolous on its face." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986). Defendants' fraud claims are not frivolous on their face. To the contrary, Felman's detailed argument of the facts and evidence demonstrates a lack of frivolity or clear insufficiency and the application of these purported facts to the law of this case is a job for the jury. *See West Virginia Hous. Dev. Fund*, 200 F.R.D. at 567 n. 3. Accordingly, the Court will not deny Defendants' motion on the grounds of futility.[3]

---

[3]The Court also rejects Felman's futility argument on the grounds of duplication with Defendants' Sixteenth Affirmative Defense. The affirmative defense alleges fraud in the application for insurance; whereas, the counterclaims allege fraud during the claims process. The Court therefore finds the counterclaims sufficiently distinct to allow amendment.

**Conclusion**

Defendants motion is **GRANTED** and the Clerk is **DIRECTED** to **FILE** the Amended Answer and Counterclaim (Doc. # 265-1) and attached exhibits (Docs. #265-2 through #265-25), with an effective filing date of **July 28, 2010.**

The Court **DIRECTS** the Clerk to send a copy of this Opinion and Order to counsel of record and any unrepresented parties.

ENTER: July 28, 2010

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE