IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

FELMAN PRODUCTION, INC.,
a Delaware corporation,

                Plaintiff,

v.                                        CIVIL ACTION NO. 3:09-0481

INDUSTRIAL RISK INSURERS,
an unincorporated association, et al.,

                Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Mt. Hawley Insurance Company's ("Mt. Hawley") Motion to Dismiss Counts II, III, and IV of Felman Production, Inc.'s Counterclaim (Doc. #183). For the reasons set forth below, the motion is **GRANTED.**

### Background

Plaintiff, Felman Production, Inc. ("Felman"), a Delaware corporation, owns and operates a metals plant ("Plant") in New Haven, West Virginia, which produces silicon-manganese for resale to steelmakers. The Plant houses three furnaces, Furnaces #2, #5, and #7, each of which Felman asserts is capable of independently smelting its silicon-manganese product. On February 23, 2008, Felman purchased a commercial property insurance policy ("IRI Policy") for the Plant from Industrial Risk Insurers ("IRI"), an unincorporated association. The IRI Policy covered, in pertinent part, property damage and business interruption loss associated with the Plant's operations. This policy was effective from February 23, 2008, until February 28, 2009, and had a policy limit of $25,000,000. In addition to the IRI Policy, Felman purchased an excess insurance policy for the

Plant from Mt. Hawley ("Mt. Hawley Policy"). The Mt. Hawley Policy was also effective from February 23, 2008, until February 28, 2009, and had a policy limit of $10,000,000.

On the Declarations page of the Mt. Hawley Policy, it clearly states that "**Total coverage (limit) applicable Limit $**10,000,000, **part of $**10,000,000 **Excess of $**25,000,000." *Mt. Hawley Policy Declarations Page* (Doc. #75-2) (emphasis in original). Further, the policy provides "[c]overage under this policy attaches excess of the underlying insurance which, in turn, is subject to deductibles." *Id.* This general coverage statement is repeated at various points in the policy and the "Excess Property Coverage" endorsement states that "the total amount of Underlying Insurance is $25,000,000," through a policy with IRI. *Mt. Hawley Policy Excess Prop. Coverage Endorsement* (Doc. #75-2). Moreover, the endorsement provides:

> **6. LOSS PAYMENT**
>
> Liability under our policy for our share of the "Ultimate Net Loss" will not attach until the underlying insurer(s) have paid, admitted liability for, or have been held legally liable for the full amount of their respective participations of the "Ultimate Net Loss." *Id.*

On or about April 27, 2008, a transformer supplying power to Furnace #2 at the Plant failed. The failure rendered the furnace inoperable and resulted in physical damage to the structure as well as business interruption loss. On May 9, 2008, Felman reported the failure to IRI, seeking coverage under its policy. Then, on or about August 22, 2008, Felman submitted a Proof of Loss to IRI in which it informed the primary insurer that it expected the repairs to the Furnace #2 transformer to take approximately eight months and to cost more than $1,200,000. *Pl.'s Compl.* (Doc. #1), at ¶19. Also in its Proof of Loss, Felman informed IRI that it anticipated the business interruption loss it would suffer over the eight-month repair period to be in excess of $38,000,000. Taken together, this meant Felman expected a total covered loss in excess of $39,000,000. *Id.*

On or about August 13, 2008, Felman tendered a claim arising out of the April 27, 2008, furnace failure to Mt. Hawley. Mt. Hawley received a copy of the Proof of Loss Felman provided to IRI, from IRI, on October 2, 2008. Then, on October 21, 2008, Mt. Hawley sent a letter to Felman (1) acknowledging its receipt of Felman's Proof of Loss, and (2) expressly reserving all rights and defenses it might have in connection with the value and the loss described by Felman. According to Mt. Hawley, it neither accepted nor rejected Felman's claim at this time.[1]

On May 1, 2009, after approximately one year of inconclusive coverage discussions with its primary insurers, Felman filed this suit. As defendants, Felman named IRI, Swiss Reinsurance, and Westport Insurance Company ("Westport") (hereinafter collectively referred to as "Defendants" or "IRI"). The latter two, Swiss Reinsurance and Westport, are the two of two member companies in IRI's unincorporated association. In its Complaint, Felman claims that each of these three entities is directly liable to it for: (1) breach of IRI's insurance contract with Felman, and (2) damages arising out of IRI's bad faith failure and/or refusal to discharge its responsibilities under the IRI Policy. Also in the Complaint, Felman claims a combined property damage and business interruption loss exceeding $39,000,000. Nowhere in the Complaint, however, was there any mention of Mt. Hawley and/or of Felman's excess insurance policy.

On November 3, 2009, Mt. Hawley filed a motion to intervene in this action (Doc. #75). Mt. Hawley moved to intervene on the grounds that its excess insurance policy will be implicated *if* Felman is able to (1) establish coverage and (2) prove a combined repair and business interruption

---

[1]The Court understands that Mt. Hawley has not affirmed or denied coverage, under its excess insurance policy with Felman, as of the date of this Memorandum Opinion and Order. *See Felman's Counter-cl.* (Doc. #163), at ¶ 14 ("To date, Mt. Hawley has neither finally accepted nor finally rejected Felman's claim under the Mt. Hawley Policy.").

loss exceeding $25,000,000. *See generally Mt. Hawley's Mot. to Intervene* (Doc. #75); *see also Dec. 16, 2009 Mem. Op. & Order* (Doc. #122), at 3. Defendants IRI, Swiss Reinsurance, and Westport did not oppose Mt. Hawley's motion to intervene. *See Defs.' Resp. to Mt. Hawley's Mot. to Intervene* (Doc. #93). However, Felman opposed the motion as (1) premature or (2) untimely. *See Pl.'s Memo. in Opp'n to Mt. Hawley's Mot. to Intervene* (Doc. #92). Felman argued that Mt. Hawley's motion was premature because "insurance coverage under the Mt. Hawley policy is not triggered unless and until the $25 million primary policy limit is exhausted" and "any coverage dispute concerning Mt. Hawley's excess insurance policy is [therefore] not ripe for this Court's review." *Id.* at 1-2. In the alternative, Felman argued that Mt. Hawley's motion was untimely because "[d]iscovery is well under way in this case." *Id.* at 2.

The Court granted Mt. Hawley's motion to intervene on December 16, 2009. *Dec. 16, 2009 Mem. Op. & Order* (Doc. #122). The Court noted the Fourth Circuit's policy in favor of "liberal intervention," *id.* at 4 (quoting *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986)), and specifically found that "Mt. Hawley satisfie[d] the Fourth Circuit's three-part test for intervention as a matter of right" because "Felman claims a total loss arising out of the April 27, 2008, furnace failure in excess of $39,000,000 and thus sufficient to trigger coverage under the Mt. Hawley Policy." *Id.* at 5. Accordingly, the motion was granted and the intervening complaint of Mt. Hawley filed on December 16, 2009. *See Mt. Hawley's Intervening Compl.* (Doc. #129).

When issued on February 23, 2008, the Mt. Hawley Policy contained an exclusion from coverage for "loss or damage caused by or resulting from ... Artificially generated electrical current, including electrical arcing, that disturbs electrical devices, appliances or wires." *Id.* at 3 ("the Arcing Exclusion"). However, on May 14, 2008, at the request of Felman, the Mt. Hawley Policy was

modified to provide coverage, with certain exceptions, that "follows the form" of the IRI Policy. *Id.* Accordingly, the Arcing Exclusion was deleted from the Mt. Hawley Policy. *Id.* This May 14, 2008 modification was made retroactively effective to the Mt. Hawley Policy's February 23, 2008, inception date. *Id.*

On January 4, 2010, Mt. Hawley filed an amended intervening complaint. The amended intervening complaint contains the same factual assertions, in the exact language quoted above. *See Mt. Hawley's Am. Intervening Compl.* (Doc. #142), at 3. Additionally, in the amended complaint, Mt. Hawley brings several claims against Felman and makes several requests to the Court, including: (1) a request for "an order reforming the Mt. Hawley Policy to include only Pre-Modification Terms, or in the alternative, to incorporate the Arcing Exclusion," *id.* at 9, and (2) a request for a declaration that coverage is not provided under the Reformed Mt. Hawley Policy. *Id.* at 9-10.

Mt. Hawley seeks reformation of its policy on the grounds that Felman failed to disclose the April 2008 furnace failure, and related insurance claim, to Mt. Hawley, prior to requesting modification of its excess policy. Mt. Hawley argues that "[h]ad Felman disclosed to Mt. Hawley the Claim and/or events giving rise to it prior to May 14, 2008, Mt. Hawley would not have agreed to modify the Mt. Hawley Policy to include the Post-Modification Terms, or would have ensured that the modifications did not delete the Arcing Exclusion." *Id.* at 8. Accordingly, Mt. Hawley argues that "Felman's failure to disclose the Claim and/or the events giving rise to it prior the [sic.] modification of the Mt. Hawley Policy constitutes fraud and/or inequitable conduct." *Id.*

On January 21, 2010, Felman filed an Answer to First Amended Intervening Complaint of Mt. Hawley Insurance Company and Counterclaim (Doc. #163). Felman brings a four-count

counterclaim against Mt. Hawley, in which it: (1) seeks a declaration that Mt. Hawley is obligated (a) to pay for the business interruption and additional expense loss Felman has sustained in excess of $25,000,000, (b) to reimburse Felman for all amounts incurred to obtain the declaration, and (c) to reimburse Felman for its costs (Count I); (2) alleges breach of contract on the part of Mt. Hawley due to its failure and/or refusal "to pay for the business interruption and additional expense loss in excess of $25,000,000" (Count II); (3) alleges violations of the West Virginia Unfair Trade Practice Act ("the Act"), W.Va. Code § 33-11-4(9), and the West Virginia Code of State Rules, W. Va. Code R. § 114-14-6.7 ("the Rule") (Count III); and (4) brings a *Hayseeds* claim against Mt. Hawley (Count IV). *See Felman's Ans. & Counter-cl.* (Doc. #163), at 15-21.

Mt. Hawley now moves to dismiss Counts II, III, and IV of Felman's counterclaim. Mt. Hawley makes several arguments for dismissal, including that: (1) Count II should be dismissed because Mt. Hawley has no coverage obligations to Felman unless and until the underlying policy is exhausted, *see generally Mt. Hawley's Mot. to Dismiss* (Doc. #183); (2) Count III should be dismissed because "neither the Act nor the Rule apply to Mt. Hawley, or, for that matter, any insurer in Mt. Hawley's position," *id.* at 5; and (3) Count IV should be dismissed because the *Hayseeds* doctrine does not apply to business interruption loss or extra expense claims. *See generally id*.

Felman responds to Mt. Hawley's motion with a litany of arguments in opposition, including judicial estoppel. *See Felman's Resp. in Opp'n* (Doc. #235). Because the Court finds that Felman's counterclaim should be dismissed, largely, on the grounds that Mt. Hawley contracted with Felman to provide an *excess* insurance policy under which coverage has not been triggered, the Court will not review all of Felman's arguments.

**Standard of Review**

"To survive a Rule 12(b)(6) motion to dismiss, the facts alleged must be enough to raise a right to relief above the speculative level and must provide enough facts to state a claim to relief that is plausible on its face." *Robinson v. Am. Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)) (internal quotations omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted); *see also Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) ("[T]he Rule does call for sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.").

When considering a motion to dismiss, a court "accept[s] as true all well-plead allegations and view[s] the complaint in the light most favorable to the plaintiff." *Sec. of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 710 (4th Cir. 2007); *see also Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991). A court "may consider documents attached to the complaint as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Trimble*, 484 F.3d at 705. Finally, "determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Iqbal*, 129 S.Ct. at 1950.

## Analysis

The Court **FINDS** that dismissal is appropriate in this case, in large part, because the Mt. Hawley Policy is an excess insurance policy for which liability has not yet attached.

"Excess liability policies ... do not provide first-dollar coverage for insured losses, but

instead provide an additional layer of coverage for losses that exceed the limits of a primary liability policy. Coverage under an excess policy thus is triggered when the liability limits of the underlying primary insurance policy has been exhausted." *Horace Mann Ins. Co. v. Gen. Star Nat'l Ins. Co.*, 514 F.3d 327, 329 (4th Cir. 2008) (citing authority). Because it is only after the underlying primary policy has been exhausted that excess coverage kicks in, excess insurance policies are priced on the assumption that primary coverage exists, and often require, by their terms, that an insured maintain scheduled limits of primary insurance. *Id.* Moreover, an excess insurer has no duty to defend its insured in an underlying insurance action, or to enter into settlement negotiations with any plaintiffs in the underlying action. *Vencill v. Cont'l Cas. Co.*, 433 F.Supp. 1371, 1378-79 (S.D. W.Va. 1997); *see also State ex rel. Allstate Ins. Co. v. Karl*, 437 S.E.2d 749, 745 n. 8 (W. Va. 1993) ("Excess insurance is routinely written in the insurance industry with the expectation that the primary insurer will conduct all of the investigation, negotiation and defense of claims until its limits are exhausted. ... Thus, the primary insurer acts as a sort of deductible and the excess insurer does not expect to be called upon to assist in these details.") (quoting 7C J. Appleman, *Insurance Law and Practice §4682* (1979 & Supp. 1992)).

As noted *supra*,

> Liability under [the Mt. Hawley] policy for [its] share of the "Ultimate Net Loss" will not attach until the underlying insurer(s) have paid, admitted liability for, or have been held legally liable for the full amount of their respective participations of the "Ultimate Net Loss." *Mt. Hawley Policy Excess Prop. Coverage Endorsement* (Doc. #75-2).

None of the preconditions to coverage articulated in the Mt. Hawley Policy are met. IRI has neither paid nor admitted liability for coverage in the amount of $25,000,000. Felman submitted a proof of loss in excess of $39,000,000. However, as the company is well aware, this case is on-going and

its business interruption claim, and thus its proof of loss calculations, are hotly contested. As a result, the third and final mechanism for attachment of liability under the Mt. Hawley Policy is not satisfied. IRI has not been held legally liable for its policy limits of $25,000,000.

The general principles governing breach of contract claims are well known. The party stating a claim for breach must show: (1) the existence of a valid, enforceable contract; (2) that it has performed under the contract; (3) that the defendant has breached or violated its duties or obligations under the contract; and (4) that the plaintiff has been injured as a result. *Executive Risk Indem., Inc. v. Charleston Area Med. Ctr., Inc.*, 681 F.Supp.2d 694, 714 (S.D. W.Va. 2009) (citing 23 *Williston on Contracts § 63:1* (Richard A. Lord, ed. 4th ed. 2009)). For a plaintiff to show that a defendant has breached or violated its duties or obligations under a contract, it must demonstrate that all conditions precedent to the defendant's performance have been satisfied. *Id.* (citing *Harper v. Consol. Bus Lines*, 185 S.E. 225, 225-26 (W. Va. 1936)).

Felman's breach of contract claim (Count II) is **DISMISSED** because IRI's policy limits have not been exhausted, neither through payment, admission, nor legal judgment. As a result, liability under the Mt. Hawley Policy has not attached and there is no duty or obligation that Mt. Hawley has failed (or is failing) to perform (i.e., there is no breach).[2]

---

[2] In its response in opposition, Felman argues, strenuously, that Mt. Hawley argued, in its intervening complaints and in its motion to intervene, that its excess policy coverage has been triggered in this case. *See Felman's Resp. in Opp'n* (Doc. #235), at 2-3. Additionally, Felman contends that the Court adopted this position in its December 16, 2009 Memorandum Opinion and Order. *Id.* at 3-4. Thus, Felman argues that a finding that coverage under the Mt. Hawley Policy has been triggered "is now the law of the case" and Mt. Hawley should be "judicially estopped" from presenting a contrary position. *Id.* The argument is unconvincing. "Judicial estoppel is a principle developed to prevent a party from taking a position in a judicial proceeding that is inconsistent with a stance previously taken in court." *Zinkand v. Brown*, 478 F.3d 634, 638 (4th Cir. 2007). The purpose of judicial estoppel is to protect the essential integrity of the judicial process. *See New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)

Similarly, Felman's claim that Mt. Hawley is in violation of the West Virginia Unfair Trade Practices Act (Count III) is **DISMISSED** for several reasons. First, Mt. Hawley argues, and Felman concedes, that Mt. Hawley has neither affirmed nor denied coverage under its excess insurance policy with Felman. Consequently, there is no grounds for Felman's argument that Mt. Hawley is in violation of West Virginia Code § 33-11-4(9)(d).[3] This conclusion is supported by the fact that, based on the general principles governing excess insurance policies articulated above, Mt. Hawley, as an excess insurer, has no duty (reasonable or otherwise) to investigate Felman's claims. *See Karl*, 437 S.E.2d at 745 n. 8. Second, because the policy limits of the IRI Policy are not yet (and may not be) exhausted, West Virginia Code § 33-11-4(9)(e) is inapplicable here.[4] Finally, even in the case

---

(quoting *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1166 (4th Cir. 1982)). A determination that judicial estoppel is appropriate, in a particular case, requires the satisfaction of three elements: (1) the party's later position is "clearly inconsistent" with its earlier position; (2) the prior inconsistent position was accepted by the court; and (3) the party against whom judicial estoppel is to be applied must have "intentionally mislead the court to gain unfair advantage." *Zinkand*, 478 F.3d at 638; *see also New Hampshire*, 532 U.S. at 750. The Court has fully and carefully reviewed its December 16, 2009 decision. Additionally, it is familiar with the arguments made by Mt. Hawley in favor of intervention and in its intervening complaints. Mt. Hawley argued, and the Court agreed, that the excess insurance policy will be implicated *if* Felman is able to (1) establish coverage and (2) prove a combined repair and business interruption loss exceeding $25,000,000. *Mt. Hawley's Mot. to Intervene* (Doc. #75); *Dec. 16, 2009 Mem. Op. & Order* (Doc. #122), at 3. Nowhere in its argument, or in the Court's decision, did Mt. Hawley or the Court argue or find that the Mt. Hawley Policy had actually been triggered. To the contrary, the Court acknowledged in its December 16, 2009 Memorandum Opinion and Order, as it does here, that the Mt. Hawley Policy has not yet been triggered. Accordingly, judicial estoppel is not appropriate here.

[3]West Virginia Code § 33-11-4(9)(d) provides that no person shall "refus[e] to pay claims without a reasonable investigation based upon all available information."

[4]West Virginia Code § 33-11-4(9)(e) provides that no person shall "fail[] to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed." Here, Felman has submitted a proof of loss claiming damages in excess of $39,000,000. However, it is the exhaustion of the liability limits of Felman's IRI Policy, not the submission of Felman's proof of loss, that triggers liability under the Mt. Hawley Policy. Accordingly, the "reasonable time" standard set out in § 33-11-4(9)(e) does not apply here.

of violation, a conclusion the Court need not reach, and makes no comment on, here, taken together, singular violations of West Virginia Code § 33-11-4(9)(b) and West Virginia State Rule § 114-14-6.7 would not be sufficient to establish a violation of the Act.

A plaintiff who seeks to show that an insurer has violated West Virginia Code § 33-11-4(9) must demonstrate that the insurer engaged in a "general business practice," resulting in violations. *See W.V. Code § 33-11-4(9)*; *see also White v. Am. Gen. Life Ins.*, 651 F.Supp.2d 530, 547 (S.D. W.Va. 2009) ("[T]he plaintiffs must 'demonstrate that the insurer (1) violated the UTPA in the handling of the claimant's claim and (2) that the insurer committed violations of the UTPA with such frequency as to indicate a general business practice.'") (quoting *Holloman v. Nationwide Mut. Ins. Co.*, 617 S.E.2d 816, 823 (W. Va. 2005)); Syl. Pt. 3, *Jenkins v. J.C. Penney Cas. Ins. Co.*, 280 S.E.2d 252 (W. Va. 1981) (same). While a claimant may produce evidence sufficient to show a "general business practice" based on a single insurance claim, this requires that the plaintiff show "separate, discrete acts or omissions, each of which constitute violations of different sub-paragraphs of W. Va. code § 33-11-4(9)[.]" *Dodrill v. Nationwide Mut. Ins. Co.*, 491 S.E.2d 1, 12 (W. Va. 1997). Felman has not made such a showing here. Further, even if Felman could show a violation of West Virginia Code § 33-11-4(9)(b), which, at this point, the Court doubts, such a violation combined with a violation of West Virginia State Rule § 114-14-6.7 would not be sufficient to establish a "general business practice" under the Act. *See White*, 651 F.Supp.2d at 548 ("Recognizing that the rules are cumulative of the robust list of section 33-11-4(9) statutory practices, in the context of reviewing a WVUTPA claim, this court has previously declined to consider alleged rule violations except insofar as they may inform the scope and purpose of the statutory practice at issue.") (internal quotations omitted). Because Felman cannot establish a

"general business practice" resulting in violations of multiple sub-paragraphs of West Virginia Code § 33-11-4(9), its Unfair Trade Practices Act counterclaim is **DISMISSED**.

Lastly, Felman's *Hayseeds* claim (Count IV) is **DISMISSED** because Felman has not argued sufficient facts to state a plausible claim for relief for bad faith. Felman argues that Mt. Hawley "willfully and intentionally failed and refused to pay Felman[.]" *Felman's Ans. & Counter-cl.* (Doc. #163), at ¶ 42). However, as noted *supra*, Mt. Hawley has neither affirmed nor denied coverage under its policy. Further, the policy has not been (and may not be) triggered because the IRI Policy limits are not exhausted (neither through payment, admission, nor legal judgment). In *Hayseeds*, the West Virginia Supreme Court of Appeals "held that, in cases where a policy holder sues his own insurer over a property damage claim and substantially prevails, the insurer may be held liable for consequential damages flowing from the delay in payment, certain quasi-compensatory damages such as aggravation and inconvenience, the policyholder's reasonable attorney fees, and – in an appropriate case – punitive damages." *See Maher v. Cont'l Cas. Co.*, 76 F.3d 535, 543 (4th Cir. 1996) (citing *Hayseeds, Inc. v. State Farm Fire & Cas.*, 352 S.E.2d 73, 80-81 (W. Va. 1986)).

> The premise underlying *Hayseeds* was that the insurer had contractually promised the insured such coverage. Consequently, the insurer has a duty to settle with its insured on a claim for which the insured was legally entitled to recover. If the insurer declined to settle, and the insured was required to sue and then substantially prevailed, the insurer was liable for not just the verdict but also for attorney fees and incidental damages. *Marshall v. Saseen*, 450 S.E.2d 791, 797 (W. Va. 1994).

Under the Mt. Hawley Policy, Mt. Hawley, an excess insurer, has no contractual duty to defend, investigate, or enter into settlement negotiations with Felman. *See Karl*, 437 S.E.2d at 745 n. 8; *Vencill*, 433 F.Supp. at 1378-79. Additionally, Mt. Hawley has no contractual obligation to pay on its policy unless and until the IRI Policy limits are exhausted. *Mt. Hawley Policy Excess Prop. Coverage Endorsement* (Doc. #75-2); *see also Horace Mann*, 514 F.3d at 329. As a result, Felman

has alleged no facts that suggest that Mt. Hawley is in breach of its insurance contract with Felman. Consequently, irregardless of whether Felman's claim is for property damage or business interruption and extra expense loss, the Court finds that Felman fails to allege sufficient facts for its *Hayseeds* claim to withstand Mt. Hawley's motion to dismiss. *See Iqbal*, 129 S.Ct. at 1949-50. Count IV is, therefore, **DISMISSED**.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented parties.

ENTER: September 2, 2010

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE