```
            UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF WEST VIRGINIA

                      HUNTINGTON


FELMAN PRODUCTION, INC.,

        Plaintiff,

v.                                   Case No. 3:09-cv-00481

INDUSTRIAL RISK INSURERS,
WESTPORT INSURANCE COMPANY, and
SWISS REINSURANCE AMERICA CORPORATION,

        Defendants.

MT. HAWLEY INSURANCE COMPANY,

        Intervening Party.¹
```

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' motion to compel Felman Production, Inc. ("Felman") to produce four individuals for deposition (docket # 420). Felman has responded in opposition (# 425) and Defendants filed a reply (# 430). The potential deponents are Mustafa Akyuzlu, Alexandr Anosov, Gennadiy Bogolyubov and Denys Dolzhykov. The motion was argued at the hearing on December 8, 2010.

### The Context of the Dispute

This action concerns Felman Production, Inc.'s claim on its property damage and business interruption loss insurance policy

---

[1] Mt. Hawley Insurance Company and Felman Production, Inc. have reached an agreement to dismiss their respective claims against each other without prejudice (docket # 428).

attributable to the failure of a transformer for a silicomanganese furnace.  In the Memorandum Opinion and Order entered August 19, 2010 (# 398), the Court addressed the roles of Ukrainian individuals (the so-called Privat representatives) who are associated with entities which are closely connected to Felman. These potential deponents are also Ukrainians and do not currently hold titles of officers or directors of Felman.  Defendants have identified the four as "managing agents" to be deposed pursuant to notice, under Federal Rule of Civil Procedure 30(b)(1).  While the term "managing agent" does not appear in Rule 30(b)(1), it is used in Rule 30(b)(6), Rule 32(a)(3), and Rule 37(d)(1)(A)(i).  If the Court deems them to be "managing agents," Defendants will avoid the difficulties of serving them with process and of using the Hague Convention.  They may be deemed to have authority to testify for Plaintiff.  The level of sanctions available to enforce the litigation responsibilities of a "managing agent" versus a third-party witness are significant.

## Leading Cases

Upon review of the memoranda submitted by the parties and the decisions cited therein, it is apparent that the cases on the issue of whether a person is a corporation's "managing agent" for the purpose of appearing for a deposition in response to a notice are remarkably consistent.  Leading cases, repeatedly cited in subsequent decisions, are: <u>Founding Church of Scientology of</u>

2

Washington, D.C., Inc. v. Webster, 802 F.2d 1448 (D.C. Cir. 1986) ("Webster"); United States v. Afram Lines (USA), Ltd., 159 F.R.D. 408 (S.D.N.Y. 1994); In re Honda American Motor Co., Inc. Dealership Relations Litigation, 168 F.R.D. 535 (D. Md. 1996) ("Honda"); E.I. DuPont de Nemours and Co. v. Kolon Indus., Inc., 268 F.R.D. 45 (E.D. Va. 2010) ("Kolon Indus.").

**Factors to be Considered**

The courts are in agreement that the following factors should be considered, on a case-by-case basis, in deciding a person's "managing agent" status.

> (1) [W]hether the corporation has invested the person with discretion to exercise his judgment, (2) whether the employee can be depended upon to carry out the employer's directions, and (3) whether the individual can be expected to identify him or herself with the interests of the corporation as opposed to the interests of the adverse party.

Honda, 168 F.R.D. at 540. Afram Lines stated the factors slightly differently:

> 1) whether the individual is invested with general powers allowing him to exercise judgment and discretion in corporate matters; 2) whether the individual can be relied upon to give testimony, at his employer's request, in response to the demands of the examining party; 3) whether any person or persons are employed by the corporate employer in positions of higher authority than the individual designated in the area regarding which the information is sought by the examination; 4) the general responsibilities of the individual "*respecting the matters involved in the litigation*," Kolb v. A.H. Bull Steamship Co., 31 F.R.D. 252, 254 (E.D.N.Y. 1962) (emphasis in the original); and 5) whether the individual can be expected to identify with the interests of the corporation.

159 F.R.D. at 413 (citing <u>Sugarhill Records Ltd. v. Motown Record Corp.</u>, 105 F.R.D. 166, 170 (S.D.N.Y. 1985)).  In a case decided this year, the factors were stated thusly:

> (1) the discretionary authority vested in the person by the corporation; (2) the employee's dependability in following the employer's directions; (3) whether the individual is more likely to identify with the corporation or the adverse party in the litigation; and (4) the degree of supervisory authority in areas pertinent to the litigation. Of these factors, the third – the employee's identity of interests with his employer as opposed to the opposing party – is "paramount."

<u>Kolon Indus.</u>, 268 F.R.D. at 48-49 (citing <u>Honda</u>, 168 F.R.D. at 540-41).

The courts are in agreement that the burden is on the discovering party to establish the status of the witness, and doubts are resolved in favor of the discovering party.  <u>Sugarhill</u>, 105 F.R.D. at 170-71; <u>Afram Lines</u>, 159 F.R.D. at 413; <u>Honda</u>, 168 F.R.D. at 540; <u>Kolon Indus.</u>, 268 F.R.D. at 49.

The general rule is that former employees cannot be "managing agents" of a corporation, but there are important exceptions to the rule.  <u>Afram Lines</u> directs that the focus should be both on "the formal connection between the witness and the party at the time of the deposition, but also on their functional relationships."  159 F.R.D. at 414.  The decision quotes with approval from <u>Webster</u>:

> Courts have accorded managing agent status to individuals who no longer exercised authority over the actions in question (and even to individuals who no longer held any position of authority in the corporation), so long as those individuals retained some role in the corporation or at least maintained interests consonant with rather

4

than adverse to its interests.

Afram Lines, id. (quoting Webster, 802 F.2d at 1456 (citations omitted)).  Use of the corporation's organs of communication and access to the corporation's confidential documents may indicate managing agent status.  Afram Lines, id. (internal citations omitted).

The Honda and Kolon Indus. decisions agree that the general rule is that the determination of managing agent status is made at the time of the deposition, but that an exception would be made if a managing agent were terminated to avoid disclosure of information in litigation, or if the person were reappointed to another position in the corporation.  Honda, 168 F.R.D. at 541; Kolon Indus., 268 F.R.D. at 49.

Assuming that a witness is deemed to be a "managing agent," the witness's status can be explored at the deposition, reserving for trial the decision whether his testimony will bind the corporation.  Afram Lines,159 F.R.D. at 414; Kolon Indus., 268 F.R.D. at 51.

### Application of the Factors to the Witnesses

The subject of this litigation is the veracity of Felman's insurance claim for property damage and business losses resulting from the failure of the electrical transformer for Furnace # 2. The transformer failed in April, 2008; it took nine months to repair it and several more months after that to increase production

5

levels of Furnace # 2.

Mustafa Akyuzlu

    Defendants contend that Mr. Akyuzlu was Felman's "Plant Manager" from late 2008 to May, 2009. (# 420, at 4.) His email address was "pm@fpiwv.com." He is described as "Plant Manager" in the minutes of conference calls. (# 420, Ex. A, tabs 2 through 11.) Defendants have detailed his involvement in the plant's operations, particularly Furnace # 2, at # 420, Exhibit A, tabs 1 through 19, in both minutes and emails. The April, 2009 production from Furnace # 2 was used to extrapolate Felman's business losses during the nine months in 2008 when Furnace # 2 was not operating. Documents submitted by Defendants in Exhibit A indicate that Mr. Akyuzlu was being pressured to increase production of Furnace # 2. It appears that he was at odds with other Felman executives and alleged that technical, consumption and financial reports in early 2009 were in error, having been manipulated. They also show that Mr. Akyuzlu and other Felman executives were very concerned about the instant insurance claim and the inadequate levels of production with Furnace # 2 in operation. On April 20, 2009, Mr. Akyuzlu sent an email to Steven Pragnell, Felman's CEO, addressing discrepancies in raw material consumption as reported by Mr. Anosov. (Ex. A, tab 17.)

    Plaintiff states that Mr. Akyuzlu served as a technical consultant for Felman for approximately four months in the first

half of 2009. (# 425, at 6.) He now lives in Turkey and is employed by Dedeman Mining Group, an entity unrelated to Felman or its affiliates. Id. Felman states that Mr. Akyuzlu was terminated in May, 2009, for "performance reasons unrelated to this case." Id.; Affidavit of Mordechai Korf, # 425-2, ¶ 4, at 2.

Defendants' Reply argues that Mr. Akyuzlu had personal knowledge of the instant insurance claim and the importance of the production levels from Furnace # 2. (# 430, at 11.) They contend that he had discretionary authority to make decisions about the furnace operations and to direct employees. Id. at 12.

The Court **FINDS** that Defendants have not met their burden of proving that Mustafa Akyuzlu is a "managing agent" for Felman; thus he need not be produced for deposition in response to a notice. Although his email address and the minutes indicate that he was "plant manager," his contract suggests that Mr. Akyuzlu was a technical consultant. (# 420, Ex. A, tab 19.) He had discretionary authority to set various operating levels of Felman's furnaces, but the documents in Exhibit A indicate that he was reporting to higher level executives and needed some approvals. Since his termination 18 months ago, he cannot be depended upon to carry out Felman's directions. Other persons whose names appear on the documents in Exhibit A were in positions of higher authority regarding the production levels of Furnace # 2. The Court has no information as to whether Mr. Akyuzlu is resentful of his

7

termination; it cannot be stated with confidence that his interests ally with either Plaintiff or Defendants. It appears that he has no access to Felman's means of communications or its confidential documents.

Alexandr Anosov

Defendants assert that Mr. Anosov's title is "head of technology department of ferroalloys" of Privat Intertrading for the period 2007 to the present. (# 420-2, Ex. B, at 2.) Previous reviews of documents have established the close connection between Privat Intertrading and Felman. Defendants contend that from 2007 through 2009, Mr. Anosov managed nearly every facet of Felman's production. Id. They point to his participation in telephone conference calls in which he commented on Felman's daily production reports, production methods, furnace failures and his reports to shareholders, and approved or disapproved certain expenditures. Id. On one occasion, he described himself as "a mediator between the plant and the shareholders." Id. Defendants have requested his voluntary appearance, and that request is pending. Id. at 4.

Plaintiff responds that Mr. Anosov has never worked for Felman, as an employee or independent contractor. (# 425, at 8.) Felman states that he has served "as a past consultant to Felman in his capacity as an employee of Privat Intertrading in Ukraine and he has no personal knowledge of the Furnace No. 2 transformer failure or Felman's insurance claim arising therefrom." Id. At

8

the hearing it was learned that Privat Intertrading has declined to produce Mr. Anosov for deposition voluntarily, although it has agreed that two other Privat employees will testify. Felman contends that Mr. Anosov is not a "managing agent," despite his participation in the telephone conference calls, and deny that these documents show that he had discretionary decision-making authority for Felman. Id. at 18. Felman suggests that Mr. Anosov was merely performing a consulting function. Id.

In their Reply (# 430, at 12), Defendants dispute Mr. Anosov's purported lack of "personal knowledge" of the insurance claim and note statements attributed to him from email and the minutes of the conference calls:

> December 12, 2008 [email from Mr. Anosov to CEO Pragnell]:
> I consider necessary to be defined with additional actions for maintenance of the indicators of work of the furnace declared in front of Insurance Companys, namely: [spare parts, raw materials, employees, auxiliaries, etc.]. * * *

(# 420-2, Ex. B, tab 8, at 29.)

> February 27, 2009:
> Mr. Anosov: Mr. Maxymenko is concerned about the Insurance claim regarding the furnace # 2.
> CEO Pragnell: If you will help us to take care of the furnace # 2, the Insurance company will pay us.
> Mr. Anosov: Mr. Maxymenko was counting on this money. He said, that Mr. Pragnell promised him, that we will have this money for sure. Now Mr. Maxymenko is not so sure that we will have it. Anyway, Mr. Pragnell now is responsible for receiving this money.
> CEO Pragnell: If Ukraine will not try to stop me any more, we will have this money. Please understand – I am asking for some things not because I want them, but because I NEED them.

9

> Mr. Anosov: I will do my best to help you.

(# 420-1, Ex. A, tab 4, at 19-20.)

> March 4, 2009:
> CEO Pragnell: * * * If I requested some money, please make sure it will be approved. 20 000$ or 30 000$ is not a lot comparing to the amount of money we can receive from Insurance company. We could be a part of "Success" or part of "Loss".
> Mr. Anosov: We also have the similar slogan. Please make sure all the documents are prepared.
> CEO Pragnell: O'K.
> Mr. Anosov: Earlier we discussed that if we will shut down either furnace # 5 or # 7, we may have a better chance to receive the money from the Insurance company.

Id., tab 6, at 29.

Defendants refute Felman's contention that Mr. Anosov did not have discretionary decision-making authority by citing to other emails and minutes in which Mr. Anosov approves or disapproves requests of CEO Pragnell. (# 430, at 13.)

The Court **FINDS** that Defendants have met their burden of proving that Alexandr Anosov is a "managing agent" for Felman; thus he must be produced for deposition in response to a notice. Although his email address and the minutes indicate that he is an employee of Privat Intertrading, the submitted documents indicate that Mr. Anosov had supervisory authority over CEO Pragnell and Mr. Akyuzlu and is particularly knowledgeable of manufacturing processes of ferroalloys. As a continuing employee of Privat Intertrading, he can be depended upon to carry out directions which benefit Felman, and his interests are certainly identified with Felman, not Defendants. Mr. Anosov's comments during the telephone

calls and in the emails reflect that he has access to Felman's means of communications and its confidential documents.

<u>Gennadiy Bogolyubov</u>

In a Memorandum Opinion and Order entered herein on August 19, 2010 (# 398), the undersigned granted Defendants' motion to compel Felman to produce documents and electronically stored information ("ESI") from various individuals, including Gennadiy Bogolyubov. In that Memorandum Opinion and Order, the Court described Mr. Bogolyubov's role with regard to Felman, as follows:

> One of three shareholders of Privat Bank.
>
> On May 26, 2008, Ms. Vatutina instructed Felman CEO Pragnell to report to Mr. Bogolyubov (the "Shareholder") through Mr. Maximenko and to provide "more detailed info for Shareholder's attention." (# 372-4, at 32.)
>
> On June 13, 2008, Felman CEO Pragnell wrote a memorandum to Messrs. Maximenko and Bogolyubov, reporting on management and requesting approval for engineering specialists, 30 day invoicing, quarterly budgets and a safety/environmental officer. (# 372-4, at 76-79.)
>
> On July 7, 2008, Mr. Maximenko wrote a memorandum to Mr. Bogolyubov, concerning the possibility of building new facilities in West Virginia, noting that a precondition is the availability of the Felman plant for production of silicomanganese. (# 372-4, at 3.)
>
> On July 21, 2008, Mr. Pragnell confirmed in an email to Mr. Vatutina, copied to Messrs. Maximenko and Bogolyubov, that he works for Mr. Bogolyubov. (# 372-3, at 9.)
>
> On September 10, 2008, Felman's CEO, Mr. Pragnell, communicated with Mr. Maximenko and Mr. Bogolyubov regarding advice from counsel and the status of Felman's insurance claim. (# 372-4, at 15, ID # 3953.)

(# 398, at 10-11.) Felman did not file objections.

Defendants contend that Mr. Bogolyubov has been a Shareholder of Privat Bank from 2008 to the present and supervised CEO Pragnell, through Mr. Maximenko. They point out that Mr. Bogolyubov allowed an examination of whether Felman should produce different products, considered whether to shutdown the Felman plant, and granted or denied permission for repairs and upgrades of the Felman plant. (# 420-3, Ex. C, at 2-4.)

Felman responds that Mr. Bogolyubov (owner of a 50% stake in Felman) is not and never has been a Felman employee, independent contractor or consultant. (# 425, at 9.) Plaintiff asserts that Mr. Bogolyubov became a 50% stakeholder in the spring of 2009, after the transformer failure, id., but does not explain why Ms. Vatutina referred to him as "the Shareholder" on May 26, 2008, as quoted above from the August 19, 2010 Memorandum Opinion and Order. Plaintiff claims that his "only involvement with and/or knowledge of Felman's operations is as a recipient of infrequent periodic oral reports from Felman's CEO (Mr. Korf) regarding Felman's overall economic status," relying on the affidavit of Mr. Korf. Id.; # 425-2, ¶¶ 3, 7 at 1-3. That affidavit also states that Messrs. Akyuzlu, Anosov and Bogolyubov "had no involvement at all" in the instant insurance claim. (# 425-2, ¶ 3, at 1.) Felman argues that Defendants are relying on a handful of documents, none of which were authored by Mr. Bogolyubov. (# 425, at 9-10.)

Defendants' Reply points out that Mr. Bogolyubov is one of

only three shareholders of Privat Group, and half-owner of Felman. (# 430, at 13-14.) They argue that he authorized examination of a proposal to change Felman's plant to production of "high technological alloys (MC/LC FeMn, LC SiMN)," and the repair of the transformer for Furnace # 2, and disallowed Mr. Pragnell's request for reimbursement of his personal vehicle gas usage. Id. at 14.

In the Memorandum Opinion and Order entered August 19, 2010, the undersigned noted that on June 13, 2008, Felman CEO Pragnell wrote a memorandum to Messrs. Maximenko and Bogolyubov, reporting on management and requesting approval for engineering specialists, working on 30 day invoicing, quarterly budgets and a safety/environmental officer. (# 372-4, at 76-79.) On October 22, 2008, six months after the transformer failure, Felman CEO Pragnell wrote a memorandum to Mr. Maximenko regarding the possible shutdown of Felman, noting the importance of the "Shareholders" and their ability to require a shutdown. (# 372-3, at 12.) The memorandum notes that the Privat Shareholders would suffer a loss of $3 million if the plant were shut down, compared to its remaining in operation. Id. The undersigned concluded the Memorandum Opinion and Order by writing that the exhibits submitted by Defendants establish that the Privat representatives have been "calling the shots" at Felman since their acquisition of the business. "The exhibits indicate that it is one or two shareholders and their designees who are making the critical decisions at Felman from the

13

Ukraine. As such, they have placed themselves as major players in this litigation." (# 398, at 25-26.) Mr. Korf was not employed by Felman during the period that these documents were generated, and he lacks personal knowledge of Mr. Bogolyubov's activities and authority over Felman's business during 2008. Mr. Korf's affidavit (# 425-2) is contrary to the documents submitted to the Court and it is disregarded.

The Court **FINDS** that Defendants have met their burden of proving that Gennaidy Bogolyubov is a "managing agent" for Felman; thus he must be produced for deposition in response to a notice. As a Shareholder and 50% owner of Felman, the submitted documents indicate that Mr. Bogolyubov had supervisory authority over CEO Pragnell and Mr. Maximenko. He exercised his judgment in making important decisions for Felman and had the highest authority. His interests are wholly aligned with Felman, not Defendants.

<u>Denys Dolzhykov</u>

Denys Dolzhykov is identified on numerous Felman documents as its "Human Resources Manager." Defendants contend that "his responsibilities extended beyond employee issues and included obtaining contracts and other evidence to prove Felman's insurance claim, calculating business interruption losses, and communicating with experts about changing the product produced at Felman's Plant." (# 420-4, Ex. D, at 2.) They note that he frequently communicated with Felman's attorney, Gene Burd. <u>Id.</u> Defendants

have submitted documents which, they contend, show that Dolzhykov answered questions regarding Felman's method of calculating lost production and sales when Furnace # 2 was not operational.  Id. at 3.  They note that Mr. Dolzhykov "served as an intermediary in certain communications between Felman's CEO and managing agents, Katerina Vatutina and Sergiy Maximenko.  Id., tab 8.  According to Defendants, Mr. Dolzhykov has left Felman and returned to Ukraine. Id.  He has declined to appear voluntarily at a deposition.  Id.

Felman responds that Mr. Dolzhykov was terminated in April 2010 "for performance reasons (having nothing to do with this case) and his position was eliminated."  (# 425, at 7; # 425-2, Ex. B, Korf affidavit, ¶ 5, at 2.)  The affidavit (which is silent as to what aspects of Mr. Dolzhykov's performance was unsatisfactory) indicates that Mr. Dolzhykov's "only personal knowledge concerning Felman's insurance claim is the result of his acting as an intermediary between Felman representatives - those with knowledge of the Furnace No. 2 transformer failure and the insurance claim arising therefrom - and Marks & Sokolov, which served as counsel to Felman at the time."  Id.  Felman asserts that Defendants are accusing Mr. Dolzhykov of involvement in insurance fraud and thus he is potentially adverse to Felman.  (# 425, at 8.)

Defendants' reply contends that Mr. Dolzhykov's responsibilities "extended far beyond personnel-related issues." (# 430, at 14.)  They cite to his involvement in consideration of

15

a lawsuit relating to a prior repair of the transformer at issue, his estimate of business losses, and an email to a consultant regarding production. Id. at 15.

The Court **FINDS** that Defendants have not met their burden of proving that Denys Dolzhykov is a "managing agent" for Felman; thus he need not be produced for deposition in response to a notice. Review of the minutes of telephone conference calls and emails lead the Court to conclude that Mr. Dolzhykov served as an interpreter/translator, not a decision-maker. No decisions (in fact, no comments during the conference calls) are attributed to him. The most interesting and curious document relating to Mr. Dolzhykov is the now-infamous May 14, 2008 email to Felman's attorney in which he states that he discussed with customers a proposal that sales contracts be backdated for the purpose of inflating Felman's production figures for the insurance claim. Understandably, the customers' "lowers [*sic*; lawyers] didn't like this option." (# 420-4, Ex. D, tab 2.) He reported to Mr. Burd that the customers would be willing to send a letter that the lack of production from Furnace # 2 was causing them to lose money and market, and concluded, "what it [*sic*] will be batter [*sic*; better] for insurance company - to have this letter or [backdated] contract?." Id. The communications in which Mr. Dolzhykov addresses production matters again appear to be examples of his bridging language barriers, not making decisions. His estimate of lost profits due

16

to the 2007 shutdown of Furnace # 2 (Ex. D, tab 3) appears to be merely an explanation to an English speaker, not an authoritative analysis. At the hearing, counsel for Felman indicated that Mr. Dolzhykov is unemployed. Because he was terminated approximately six months ago, he cannot be depended upon to carry out Felman's directions. When he was employed by Felman, his primary duties were related to Felman's employees. Other persons whose names appear on the documents in Exhibit A were in positions of higher authority in every aspect of plant management. The Court has no information as to whether Mr. Dolzykov is resentful of his termination; it cannot be stated with confidence that his interests ally with either Plaintiff or Defendants. It appears that he has no access to Felman's means of communications or its confidential documents.

It is hereby **ORDERED** that Defendants' motion to compel Felman to produce individuals for deposition (# 420) is granted as to Alexandr Anosov and Gennadiy Bogolyubov and denied as to Mustafa Akyuzlu and Denys Dolzhykov.

The parties will bear their own costs.

The Clerk is directed to transmit this Memorandum Opinion and Order to all counsel of record.

ENTER: December 9, 2010

*Mary E. Stanley*
Mary E. Stanley
United States Magistrate Judge