**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON**

FELMAN PRODUCTION, INC.,

       Plaintiff/Counter-defendants,

                                    Civil Action No. 3:09-cv-0481

v.                                   The Honorable Robert C. Chambers, Judge

INDUSTRIAL RISK INSURERS,
WESTPORT INSURANCE COMPANY,
and SWISS REINSURANCE AMERICA
CORPORATION,

       Defendants/Counter-claimants.

**DEFENDANTS' *MOTION IN LIMINE* TO EXCLUDE
EVIDENCE OF DEFENDANTS' OTHER CLAIMS AND BRIEF IN SUPPORT**

Defendants Industrial Risk Insurers ("IRI"), Westport Insurance Company, and Swiss

Reinsurance America Corporation (collectively, "Defendants") hereby move this Court *in limine*

to preclude Plaintiff Felman Production, Inc. ("Felman") from introducing any evidence at trial

related to any of Defendants' other insurance claims, complaints, or investigations.  Evidence

that Felman may attempt to introduce of Defendants' other insurance claims, complaints, or

investigations is inadmissible at trial for the following reasons:

- The evidence regarding Defendants' other claims is totally irrelevant and does not show a
  general business practice because, as the Court has recognized, these other claims involve
  vastly different facts, law, and issues.

- The evidence regarding Defendants' other claims has no probative value yet will cause
  severe and unfair prejudice to Defendants if it is admitted at trial.

Felman's rigorous pursuit of discovery on this issue (including issuing numerous requests

for production, filing motions to compel thousands of pages of documents, and taking two Rule

30(b)(6) depositions of IRI regarding these claims) has produced **zero** evidence indicating a

general business practice of improper adjustment conduct.  In fact, the evidence adduced by Felman shows that the facts and issues in these other claims were totally different than the facts and issues here.  Not surprisingly:

- Felman did not depose any of the policyholders or policyholders' representatives in those other claims and has not indicated an intent to call any of these individuals at trial.

- Felman did not reference any of the other claims evidence in its response to Defendants' motion for summary judgment on its bad faith claims.

- Neither of Felman's two purported claims handling experts (Rudy Martin or Michael Conroy) even mentioned any of these other claims in their expert reports, let alone provided an analysis of how these other claims show a general business practice of bad faith.

Felman knows that the other claims do not advance its allegations of a general business practice of improper adjustment conduct.  The only reason Felman intends to introduce this evidence before the jury is for its unfairly prejudicial effect.  This is impermissible under the Federal Rules of Evidence.

For the reasons explained below, Defendants respectfully request that the Court exclude *in limine* all evidence relating to any other claim disputes involving Defendants, including but not limited to claims, complaints, investigations or general claims adjustment activities.

## <u>FELMAN'S BAD FAITH CLAIMS</u>

Felman has asserted three "bad faith" related claims, including claims for common law bad faith, violations of the WVUTPA, and *Hayseeds* damages.  Specifically, Felman alleges that Defendants committed the following violations of the WVUTPA:

- Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

- Refusing to pay claims without conducting a reasonable investigation based on all available information;

- Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;

- Making claims payments to insureds or beneficiaries not accompanied by a statement setting forth the coverage under which payments are being made; and

- Failing to promptly settle claims, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.

In addition, Felman alleges that Defendants did not maintain an organized "claim file" or "claim diary" and did not have a claims handling "manual." While Defendants deny all of these allegations, Felman bases these allegations on the West Virginia regulations (which accompany the WVUTPA). Specifically, the regulations provide:

6.1. Investigation of claims. -- Every insurer shall promptly conduct and diligently pursue a thorough, fair and objective investigation and may not unreasonably delay resolution by persisting in seeking information not reasonably required for or material to the resolution of a claim dispute. . . .

6.7. Notice of necessary delay in investigating claims. -- If the insurer needs more than thirty (30) calendar days from the date that a proof of loss from a first-party claimant or notice of claim from a third-party claimant is received to determine whether a claim should be accepted or denied, it shall so notify the claimant in writing within fifteen (15) working days after the thirty-day period expires. If the investigation remains incomplete, the insurer shall provide written notification of the delay to the claimant every forty-five (45) calendar days thereafter until the investigation is complete. All such notifications must set forth the reason(s) additional time is needed for investigation. . . .

Under West Virginia law, common law bad faith claims are subsumed within the WVUTPA. *See Slider v. State Farm Mut. Auto. Ins. Co.*, 210 W. Va. 476, 483 (2001). As such, in West Virginia, in order to prevail on a claim of bad faith (common law or statutory) the claimant must prove a "general business practice" of violations of the WVUTPA. *See Mills v. Watkins,* 592 S.E.2d 877, 883 (W. Va. 2003). Since the beginning of this case, Felman has been

searching for evidence of bad faith by Defendants in their handling of other claims to help bolster its bad faith claims in this dispute.  Felman has not found any such evidence.  Still, it hopes to confuse the jury and unfairly prejudice Defendants by offering irrelevant testimony and documents regarding a handful of unrelated bad faith allegations by policyholders in different states against IRI over the last ten years.  This evidence should be excluded.

## PROCEDURAL BACKGROUND

In December 2009, Felman requested the following documents from Defendants:  "All documents concerning any business interruption loss or claim since 2000 that remained unresolved more than one year after the date of loss" or "six months after the proof of loss." (Felman's Third Request for Production of Documents to Defendant Industrial Risk Insurers, Requests Nos. 28-29, Exhibit A.)[1]  Defendants objected to Felman's request as burdensome, lacking relevance, and impinging on the privacy rights of non-parties.  (ECF 261, pp. 15-16.) The Court denied Felman's initial Motion to Compel other claims files and directed Felman to submit narrower requests.  (ECF 319, pp. 9-10.)

Felman re-submitted its requests for other claims information on May 11, 2010, and Defendants objected on the grounds that these requests were even broader.  (ECF 384, pp. 4-5, 18-19.)  On August 13, 2010, the Court limited the scope of Felman's revised document requests to complaints or investigations concerning first-party property damage, business interruption, or extra expense claims of $25 million or more, made from 2005-2009, and involving allegations of bad faith, unfair trade practices, unlawful insurance claims handling, delays in investigating, processing, adjusting, and/or in resolving any insurance claim, and/or delays in making a

---

[1]      Felman sought the same documents from each Defendant.

coverage determination for any insurance claim.  (ECF 393, p. 2.)

IRI identified three claims files that—while unrelated to any of the claims at issue in Felman's case—fell within the scope of the Court's August 13 Order:  "Glenshaw Glass," "Columbia Sussex," and "Wyndham New Orleans."[2]   In August and September 2010, IRI produced all documents within the scope of the August 13 Order from these three claims files.

On October 29, 2010 (two and a half months after the Court's August 13 Order), Felman sought to expand the scope of the August 13 Order to include electronically stored information ("ESI") and three additional claims:  "Rooms to Go," "Plaquemines," and "Sea Specialties."  In a good-faith effort to reach agreement without requiring Court intervention, IRI agreed to produce the entire hard-copy claim files for all six claims, subject to review and approval by the third parties and their counsel.  (January 26, 2011 email from R. Fisher to M. Maneche, Exhibit B.)

Felman refused this compromise and demanded that IRI produce ESI from all six claims. (February 1, 2011 letter from M. Maneche to Judge Stanley, Exhibit C.)  Felman further insisted that it needed the documents "sufficiently in advance" of the March 29, 2011 30(b)(6) deposition of IRI, scheduled to take place in London.  (*Id.*)  On February 4, 2011, the Court denied Felman's request for ESI, stating:

> Plaintiff's best source for information regarding its unfair trade practices claim is the policy-holders who brought suit against Defendants in these other contexts. ***None of the incidents which gave rise to the six insurance claims are similar to Plaintiff's claim. The defenses raised by Defendants with respect to the six claims are not like the defenses raised in this action.*** Pursuant to Rule 26(b), Federal Rules of Civil Procedure, the Court finds that the requested ESI is not reasonably calculated to lead to the discovery of admissible evidence.

(ECF 459, p. 2.)  (Emphasis added.)  After the confidentiality concerns of the third parties were

---

[2]      Westport and Swiss Re America Corporation have no responsive claims.

addressed, IRI produced the entire hard copy claims files for the six claims.

In apparent recognition of the material differences between these claims and the dispute at issue here, Felman conducted limited and ultimately unhelpful further discovery on this issue. Felman did not subpoena or depose any of the policyholders or policyholders' representatives on any of the matters contained in these documents. Far from establishing a connection, the testimony adduced at the Rule 30(b)(6) deposition of IRI show that the other claims do not show a general business practice of improper adjustment conduct.[3] For instance, IRI designee Mr. DiCenso testified that in the Sea Specialties matter, no discovery was taken on the bad faith claim and the bad faith claim was dismissed. (DiCenso, pp. 59-60, excerpts attached at Exhibit D). Likewise, IRI's other designee, Mr. Evans, testified that in the Rooms to Go matter, the bad faith claim was stayed pending resolution of the dispute which was resolved in mediation. (Evans, p. 36, excerpts attached at Exhibit E). Mr. Evans also testified that the bad faith claims in three of these claims were simply recitals of the applicable (non-West Virginia) state statutes, without any specific facts underlying the bad faith claims alleged and without any follow-up discovery. (Evans, pp. 45-46, 98-99, 115-116, 125-126, 133, Exhibit E).

Felman has submitted its Rule 26 expert disclosures and reports of its proffered claim handling experts, Rudy Martin and Michael Conroy. Neither the Rule 26 disclosures nor the expert reports mention any of the other claims. Specifically, Felman's Rule 26 expert disclosures and expert reports fail to offer any opinions regarding whether these other claims

---

[3]     All portions of Mr. DiCenso's deposition related to the other claims should be excluded from trial, and Mr. Evans' deposition (which was entirely about the other claims) should be excluded, for the reasons explained in this motion. Defendants objected to the use of the "other claims" portions of these depositions pursuant to Magistrate Judge Stanley's December 16, 2010 (ECF 441) and March 8, 2011 (ECF 478) Orders governing objections at depositions in this case.

show a pattern and practice of improper adjustment conduct, or whether the other claims involve issues even remotely similar to the issues in dispute here.  Felman also made no mention of these other claims in response to Defendants' motion for summary judgment on Felman's bad faith and WVUTPA claims (ECF 527).

In point of fact, discovery in this case has established that Felman's bad faith claims are completely frivolous and designed solely to unduly prejudice the jury's objective view of the evidence.[4]  Nevertheless, in an effort to support these unfounded bad faith claims, Felman intends to introduce evidence from these six other claim files (including complaints filed by lawyers for these other policyholders in jurisdictions other than West Virginia involving other insureds, businesses, facts, issues in dispute and policy terms and conditions).  This other claims evidence is inadmissible because it is irrelevant, would cause unfair prejudice, would mislead the jury, and would cause substantial delay and waste of time.

## ARGUMENT AND CITATION TO AUTHORITY

The Court has broad discretion to exclude evidence from trial based on lack of relevance or prejudice.  *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 386-87 (2008) (stating that "questions of relevance and prejudice are for the District Court to determine in the first instance. . . . Relevance and prejudice are determined in the context of the facts and arguments in a particular case").  Relevance and prejudice are governed by Federal Rules of Evidence 401, 402 and 403:

---

[4]      Currently pending before the Court are three potentially dispositive motions filed by Defendants, each of which establishes that Felman's claim lacks merit and was both fraudulent and intentionally exaggerated:  Defendants' motion for sanctions of default judgment and dismissal, Defendants' motion for summary judgment due to no loss sustained, and Defendants' motion for summary judgment due to fraud and misrepresentation.

**Rule 401. Definition of "Relevant Evidence"**

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

**Rule 402. Relevant Evidence Generally Admissible; Irrelevant Evidence Inadmissible**

All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible.

**Rule 403. Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time**

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

The admissibility of evidence regarding prior acts of a party, such as the other claims evidence at issue here, is also governed by Rule 404(b):

**Rule 404. Character Evidence Not Admissible To Prove Conduct; Exceptions; Other Crimes**

**(b) Other crimes, wrongs, or acts**

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

Because other claims evidence is irrelevant to the issues in this case and because its introduction would cause unfair prejudice to Defendants, mislead the jury, and waste judicial resources, other claims evidence should be excluded *in limine* under Rules 401, 402, 403 and 404(b).

**I.     The Evidence Adduced by Felman of Other Claims, Complaints, and Investigations is Not Relevant and Does Not Show a "General Business Practice" of Bad Faith.**

Evidence of other claims files, including complaints, investigations, and pleadings, is not relevant to any issues in this case.  To be relevant, evidence must have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401 (emphasis added). As the Court has already acknowledged, these other claims are vastly different from Felman's claim.  As such, evidence from these other insurance claims cannot make a fact related to Felman's bad faith or WVUTPA claims more or less probable.

The following is a brief description of each of these other claims:

- **Glenshaw Glass:**  This was a claim for property damage and business interruption by a Pennsylvania glass manufacturing facility for losses caused by a flood.  The disputed issue was whether the flood was caused by Hurricane Ivan so that the Named Storm Sublimit in the policy applied.  Suit was filed in the U.S. Bankruptcy Court for the Western District of Pennsylvania on April 24, 2006 and resolved in mediation.

- **Columbia Sussex:**  This was a claim for property damage and business interruption by a riverboat casino for losses after Hurricane Katrina.  The issues in dispute were (1) the necessity of the physical repairs; (2) the cost of moving the boat to a new site; (3) the leasehold interests; and (4) the division of costs among the multiple insurers.  This matter was litigated in the Eastern District of Louisiana and ultimately settled.

- **Wyndham New Orleans:**  This was a claim for property damage and business interruption by a hotel for losses after Hurricane Katrina.  The issues in dispute were (1) whether the Hurricane damaged the exterior of the hotel or whether the damage was due

9

to long-term degradation thus implicating exclusions; (2) the division of costs among the multiple insurers; and (3) whether arbitration was appropriate.  This matter was litigated in the Eastern District of Louisiana and ultimately settled.

- **Plaquemines:**  This was a claim for property damage (no claim for business interruption) by a school district for damage after Hurricane Katrina.  The issues in dispute were (1) whether the flood exclusions in the policy applied to the damage at issue; (2) whether other sublimits in the policy, such as for extra expense, applied to the damage at issue; (3) whether the school district's independently retained insurance consultants failed to recommend adequate insurance; (4) whether the school district's damages must be reduced by amounts paid by FEMA; (5) whether the school district failed to comply with the claims process and/or failed to submit adequate proofs of loss; and (6) whether recovery was limited to the extent that the school district failed to rebuild or rehabilitate property as required by the policy.  This matter was litigated in the Eastern District of Louisiana and ultimately settled.

- **Sea Specialties:**  This was a claim for property damage and business interruption by a Florida fish wholesaler after an outbreak of a bacteria known as listeria forced it to stop production, recall product, and dispose of contaminated fish in July 2005.  The insured subsequently went into Chapter 7 bankruptcy and did not submit a proof of loss until July 9, 2007.  The issue in dispute was the application of a pollution exclusion, which included bacteria.  This matter was litigated in the Southern District of Florida and ultimately settled.

- **Rooms To Go:**  This file consists of three separate claims for business interruption losses

As these descriptions show, all of these claims are vastly different from Felman's:  they involve different policy terms, different issues in dispute, different applicable law, and different jurisdictions.   None of these policyholders made allegations that coincide with Felman's allegations in this lawsuit, including but not limited to allegations relating to allocated payments, unorganized claims files, lack of a claims diary or claims manual, or failure to accept or reject coverage.  None of these other disputes resulted in a judicial determination that IRI, or any of the Defendants here, adjusted those claims in bad faith.   All of these cases settled.   The policyholders' general claims of bad faith were not developed.

In fact, the **only** thing these cases have in common with Felman's claims is that they involved allegations of failure to pay an insurance claim.  This is akin to saying they involve a claim of bad faith—*every* claim of bad faith is premised on a failure to pay.[5]  That these other claims involved a mere allegation of bad faith (undeveloped and unadjudicated) is not nearly enough to render them relevant to the dispute at hand.  Indeed, numerous cases state that the

---

[5]   This allegation is nothing more than a recognition of the fact that IRI disagreed with its insured relative to either coverage or measurement of the particular insured's claim. Such a generalized allegation likely exists in any dispute and certainly does not suggest or indicate that IRI was wrong to take the action it did in these other claims or for that matter purposefully took a position that it knew was wrong at the time it was taken. There is simply no evidence of bad faith in these other claims let alone evidence that would somehow make a fact related to Felman's bad faith or WVUTPA claims more or less probable.

policyholder must show something more than a mere general allegation of bad faith. *See, e.g.,* *Mills,* 592 S.E.2d at 883 (stating that to prevail on a WVUTPA claim, a policyholder must prove that, "viewing the conduct as a whole," the *wrongful* acts are "sufficiently pervasive" or endorsed by the insurance company such that the conduct can be considered a "general business practice" and not "an isolated event"); *Maher v. Cont'l Cas. Co.*, 76 F.3d 535, 543 n.10 (4th Cir. 1996) (stating that "[m]ore than a 'single isolated violation'" is "required by the statute."). The evidence from and concerning these other claims does not make it more or less likely that Defendants engaged in a "general business practice" of bad faith.

Other courts have excluded other claims evidence where the only "similarity" is that the policyholder was dissatisfied with the insurer's failure to provide coverage. For instance, in *Burley v. Homeowners Warranty Corp.*, 773 F. Supp. 844, 857-58 (S.D. Miss. 1990), the plaintiffs sought to introduce evidence from other policyholders of the defendants who believed that the defendants had wrongfully denied their insurance claims under major construction defect coverage. 773 F. Supp. 844, 857 (S.D. Miss. 1990). The plaintiffs contended that this evidence showed that the defendants engaged in a "course of conduct evincing bad faith." *Id.* The court denied the admission of the evidence of the other homeowners' claims. *Id.* at 858. As the court stated:

> [P]laintiffs here have not demonstrated that the claims in question are, in fact, similar except, of course, to the extent that those claims were denied by CIGNA. The evidence does not show that the claims are genuinely "similar" claims but rather that they are merely "other" claims having denial as the only common ground with plaintiffs' claims. Given that minimal similarity, the proposed evidence can not be considered at all probative on the issues presented in the cases at bar. The mere dissatisfaction of other homeowners as to other claims has no bearing on the propriety of CIGNA's denial of the present plaintiffs' case.

*Id.*

Here, like in *Burley*, the only supposed "similarity" between the other claims is that they involved allegations that IRI failed to provide coverage to the claimant.  In fact, Magistrate Judge Mary Stanley already noted in one of her rulings in this matter that ***"[n]one of the incidents which gave rise to the six insurance claims are similar to Plaintiff's claim."*** (ECF 459, p. 2.)  The other claims evidence Felman will seek to introduce here involves dissimilar facts and different policy terms and conditions in dispute.  Further, the alleged losses took place in states other than West Virginia and the substance and factual context of the disputes surrounding the losses vary greatly.  The other claims do not make the existence of any fact or consequence more or less probable under Rule 401 and should be excluded on this basis alone.

In addition, the fact that the Court allowed Felman to discover limited other claims evidence in this case does not show that this evidence is admissible at trial.  The scope of relevance for discovery purposes is much broader than the scope for admissibility at trial.  *Compare* Fed. R. Civ. P. 26(b)(1) (stating that for the purposes of discovery, "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence") *and* Fed. R. Evid. 401 (stating that for evidence to be admissible at trial, it "must have a tendency to make the existence of a fact of consequence to the determination of the action "more probable or less probable than it would be without the evidence.").  At the trial stage, the introducing party, in this case Felman, bears the burden of showing that the evidence of other claims is relevant.  *Desrosiers v. MAG Indus. Automation Sys.*, 675 F. Supp. 2d 598, 601 (D. Md. 2009) (stating that "at trial it is the offering party that bears the burden of demonstrating relevance, including, in this context, the 'substantial similarity' of other incidents, claims, or lawsuits.").  Felman cannot carry this burden because, as

shown above, these six other claims are vastly different from Felman's claim and involve none of the issues relevant to this case.  Moreover, the adjustment positions taken by IRI in connection with these other claims was not at the time, let alone thereafter, shown to be improper.

Further, Felman's Rule 26 disclosures mention no testimony that Felman intends to elicit at trial from its proferred claims-handling experts concerning these other claims.  If Felman intends to offer such testimony through these experts, Rule 26 requires disclosure, and Felman has violated this requirement.

Overall, other claims evidence involving different facts, different insureds, in different states (not subject to the WVUTPA), with different policy terms and different issues in dispute does not make Felman's contentions more or less likely.  Therefore, the other claims evidence here is irrelevant and inadmissible under Rules 401 and 402.

## II.     Evidence of Other Claims, Complaints, and Investigations is Highly Prejudicial to Defendants, Would Mislead the Jury, and is a Waste of Judicial Resources.

Under Federal Rule of Evidence 403, evidence of other claims, complaints or investigations is inadmissible because its total lack of probative value is vastly outweighed by "the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time." Fed. R. Evid. 403.  As shown above, the other claims evidence Felman seeks to admit is completely irrelevant to the issues at hand and thus has zero probative value.

In addition, Defendants will be unfairly prejudiced by the introduction of other claims evidence because a jury may mistakenly give weight to prior unproven bad faith claims in unrelated cases, despite the fact that the issues in those cases were vastly different and those claims were settled.  In other words, the jury may erroneously believe that the mere fact that

Defendants have been previously accused of bad faith makes it more likely that Defendants acted in bad faith here.  That would, of course, be an improper inference, as well as an impermissible inference under the Federal Rules.  Fed. R. Evid. 404(b) (stating that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith).

For instance, in *W.V. Realty v. Northern Insurance Co.*, the Third Circuit vacated a trial verdict and remanded for a new trial in part because the district court allowed testimony regarding allegations of other bad faith lawsuits against the defendant.  334 F.3d 306, 312-13 (3d Cir. 2003).  The court held that such testimony was irrelevant to the bad faith claim and unfairly prejudicial because "the jury may well have concluded, in contravention of the strictures of the Rules of Evidence, that the fact that hundreds of other bad faith lawsuits had been filed against Northern made it more likely that it committed bad faith in this lawsuit."  *Id.* at 315 (citing Fed. R. Evid. 404(b)).[6]  Similarly, if Felman introduced evidence of other claims, the jury could be misled into over-valuing the importance of these unproven allegations.  Therefore, Defendants would be unfairly prejudiced if the other claims evidence were introduced.

Similarly, in *Jones v. Automobile Association of Hartford*, the Northern District of Georgia excluded evidence of transactions between the defendant insurer and its other insureds as overly prejudicial, where the plaintiff attempted to "demonstrate that defendant has previously

---

[6]     Far from hundreds of other "bad faith lawsuits," Felman has taken discovery of only six other claims (none of which, Judge Stanley ruled, are similar to Felman's claim).  As previously stated, the alleged facts underlying the bad faith allegations in these claims were not developed through discovery and there were no judicial determinations or findings of bad faith in any of these other claims.  Furthermore, Felman has no evidence of what percentage of Defendants' overall claims these six cases represent—information that would be required in order to put these other claims in context of Defendants' overall business and claims handling activity.

acted in bad faith in denying its policy-holders' claims for reimbursement."  698 F. Supp. 226, 228 (N.D. Ga. 1988).  The court stated that Federal Rule of Evidence 404(b) normally disallows such evidence; the plaintiff argued, however, that it sought admission to show the insurer's motive.  *Id.*  The court held that "admitting the requested evidence would cause undue prejudice to defendant and cause undue delay in trial proceedings. Defendant, by its nature of business, necessarily is involved in a number of disputes. The court would be opening up a Pandora's box if plaintiff were allowed to introduce [such evidence]."  *Id.*  The court's discussion in *Jones* is equally applicable here.  If this evidence were admitted, it would prejudice Defendants and open a Pandora's box of delay through the introduction of unnecessary testimony and documents.

Indeed, allowing "other claims" evidence into this case would require the Court to actually re-litigate the merits of these six other claims within this case. This in turn would require the use and admission of evidence that has no bearing on the legitimacy of Felman's claim or for that matter the adjustment of that claim. *See Chateau Argonne Condominium Assoc. v. State Farm Ins. Co.*, 2008 U.S. Dist. LEXIS 70917, at *16 (E.D. La. Sept. 19, 2008) (holding that any probative value of evidence of the insurer's valuation of another claim was outweighed by the likelihood that the introduction of such evidence "could lead to a series of mini-trials, forcing State Farm to defend not only its valuation of the [claim at issue] but also its valuation of [the other property].")*; Burley*, 73 F. Supp. at 858 (holding that "if evidence of other claims were allowed by the court, there would be, in effect, a mini-trial on each such claim. . . . In sum, the admission of such evidence would be unduly time-consuming, unfairly prejudicial and unnecessarily confusing and will not be permitted.").

As Magistrate Judge Stanley noted at a hearing regarding Felman's efforts to expand its

discovery to include other claims:  "I'm confident Judge Chambers is not interested in trying more than one insurance loss case at a time."  (December 8, 2010 Transcript, p. 73, Exhibit F.) Felman should not be permitted to confuse the jury by introducing irrelevant evidence, waste the Court's time by litigating six mini-trials, and unfairly prejudice Defendants in this case, all based on six general allegations of bad faith failure to pay that were never developed or adjudicated.

## CONCLUSION

Other insurance claims, complaints, or investigations are completely irrelevant to any of the issues to be tried in this case.  Further, the introduction of such evidence would result in undue prejudice to Defendants, would mislead the jury, and would waste judicial resources. Felman cannot rely on such irrelevant and prejudicial evidence in an attempt to prove its unfounded bad faith and WVUTPA claims.  Therefore, Defendants respectfully request that the Court exclude *in limine* any evidence of other claims, complaints or investigations from the trial.

DATED:        September 22, 2011

s/ Jane E. Warring
Robert W. Fisher (admitted *pro hac vice*)
James V. Chin (admitted *pro hac vice*)
James A. Kitces (admitted *pro hac vice*)
Jane E. Warring (admitted *pro hac vice*)
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
One Atlantic Center
1201 W. Peachtree Street, Suite 2200
Atlanta, Georgia  30309
Telephone: (404) 760-4300
Facsimile: (404) 233-1267
rwfisher@rkmc.com
jvchin@rkmc.com
jakitces@rkmc.com
jewarring@rkmc.com

*Co-Counsel for Defendants Industrial Risk*

s/ William R. Slicer
William R. Slicer (WV Bar No. 5177)
Christopher J. Sears (WV Bar No. 8095)
Heather B. Osborn (WV Bar No. 9074)
SHUMAN, MCCUSKEY & SLICER, PLLC
Street: 1411 Virginia Street, East,
Suite 200 (25301)
Post Office Box 3953
Charleston, West Virginia  25339-3953
Telephone: (304) 345-1400
Facsimile: (304) 343-1826
wslicer@shumanlaw.com
csears@shumanlaw.com
hosborn@shumanlaw.com

*Co-Counsel for Defendants Industrial Risk Insurers, Westport Insurance Company, and*

*Insurers, Westport Insurance Company, and*
*Swiss Reinsurance America Corporation*

*Swiss Reinsurance America Corporation*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON**

FELMAN PRODUCTION, INC.,

      Plaintiff/Counter-defendants,

                                    Civil Action No. 3:09-cv-0481

v.                                The Honorable Robert C. Chambers, Judge

INDUSTRIAL RISK INSURERS,
WESTPORT INSURANCE COMPANY,
and SWISS REINSURANCE AMERICA
CORPORATION,

      Defendants/Counter-claimants.

## CERTIFICATE OF SERVICE

      I, Jane E. Warring, counsel for Defendants, do hereby certify that I have this 22nd day of September, 2011, presented the foregoing **DEFENDANTS'** *MOTION IN LIMINE* **TO EXCLUDE EVIDENCE OF DEFENDANTS' OTHER CLAIMS AND BRIEF IN SUPPORT** to the Clerk of the Court for filing and uploading to the CM/ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| Michael W. Carey, Esq. | Edwin M. Larkin, Esq. |
| S. Benjamin Bryant, Esq. | Michael K. Madden, Esq. |
| CAREY, SCOTT & DOUGLAS, PLLC | VENABLE LLP |
| Post Office Box 913 | 25th Floor |
| Charleston, West Virginia 25323-0913 | 1270 Avenue of the Americas |
| Telephone: (304) 345-1234 | New York, NY  10020 |
| Facsimile: (304) 342-1105 | Telephone: (212) 307-5500 |
| mwcarey@csdlawfirm.com | Facsimile: (212) 307-5598 |
| sbbryant@csdlawfirm.com | emlarkin@venable.com |
| | mkmadden@venable.com |
| *Co-Counsel for Plaintiff* | |
| | *Co-Counsel for Plaintiff* |

James E. Gray, Esq.
David Scott Gray, Esq.
Mark D. Maneche, Esq.
VENABLE LLP
750 E. Pratt Street, Suite 900
Baltimore, Maryland  21202
Telephone: (410) 244-7400
Facsimile: (410) 244-7742
jegray@venable.com
dsgray@Venable.com
mdmaneche@Venable.com

*Co-Counsel for Plaintiff*


s/ Jane E. Warring
Robert W. Fisher (admitted *pro hac vice*)
James V. Chin (admitted *pro hac vice*)
James A. Kitces (admitted *pro hac vice*)
Jane E. Warring (admitted *pro hac vice*)
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
One Atlantic Center
1201 W. Peachtree Street, Suite 2200
Atlanta, Georgia  30309
Telephone: (404) 760-4300
Facsimile: (404) 233-1267
rwfisher@rkmc.com
jvchin@rkmc.com
jakitces@rkmc.com
jewarring@rkmc.com

*Co-Counsel for Defendants Industrial Risk
Insurers, Westport Insurance Company, and
Swiss Reinsurance America Corporation*

s/ William R. Slicer
William R. Slicer (WV Bar No. 5177)
Christopher J. Sears (WV Bar No. 8095)
Heather B. Osborn (WV Bar No. 9074)
SHUMAN, MCCUSKEY & SLICER, PLLC
Street: 1411 Virginia Street, East,
Suite 200 (25301)
Post Office Box 3953
Charleston, West Virginia  25339-3953
Telephone: (304) 345-1400
Facsimile: (304) 343-1826
wslicer@shumanlaw.com
csears@shumanlaw.com
hosborn@shumanlaw.com

*Co-Counsel for Defendants Industrial Risk
Insurers, Westport Insurance Company, and
Swiss Reinsurance America Corporation*