### IN THE UNITED STATES DISTRICT COURT FOR
### THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

FELMAN PRODUCTION, INC.,
a Delaware corporation,

                Plaintiff,

v.                                    CIVIL  ACTION  NO.  3:09-0481

INDUSTRIAL RISK INSURERS,
an unincorporated association, et al.,

                Defendants.

### MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendants' Motion for Sanctions of Default Judgment and Dismissal of Felman's Claims (Doc. #451) and Motion for Leave to Supplement Reply in Support of Motion for Sanctions (Doc. #480).  For the following reason, the motion for default judgment sanctions is **GRANTED, in part, and DENIED, in part,** and the motion to supplement is **GRANTED**.  Plaintiff's claim for business interruption coverage is **DISMISSED with prejudice**, Defendants are entitled to an adverse inference instruction, and Defendants may seek an award of attorney fees to cover their expenses related to this Motion.[1]

---

[1]Contemporaneously with this ruling, the Court by separate order is granting summary judgment to Defendants on the business interruption claim based on the merits.  The Court regrets the length of delay in resolving the instant motion but find it nonetheless appropriate to grant the relief herein as an alternate basis for dismissing the business interruption claim.

# I.
# BACKGROUND

Since Felman initiated this case, the Court has spent little time addressing the merits of the claim.  Instead, the Court's time—in particular, that of United States Magistrate Judge Mary E. Stanley—has been consumed by numerous adversarial discovery disputes between the parties.  The instant motion is a result of a litany of discovery-related disputes, and is the culmination of one of the most contentious discovery periods ever before this Court.  International Risk Insurers ("IRI"),[2] an unincorporated association of two insurance companies—co-defendants Westport Insurance Company ("Westport") and Swiss Reinsurance America Corporation ("Swiss Re")—base their motion for sanctions on three grounds: (1) Felman's violation of the Court's August 19 and October 19, 2010 Orders; (2) Felman's spoliation of critical evidence; and (3) Felman's pattern of discovery misconduct.  *Def.'s Reply*, Doc. #471, at 1–2.  The Court will first review the factual background to the case, including a detailed background to the discovery period, before turning to its analysis of whether these facts satisfy the Fourth Circuit standard for terminating sanctions under Rule 37(b) of the Federal Rules of Civil Procedure.

## A.      Factual Background to the Case

This action, initially filed in May 2009, is an insurance case.  Felman Production, Inc. ("Felman") operates a silicon manganese plant in New Haven, West Virginia.  The plant utilizes three furnaces, designated Furnace #2, Furnace #5, and Furnace #7, in its production process.  On or about April 27, 2008, Furnace #2 failed and was rendered inoperable.  Prior to the furnace failure, IRI had issued a property insurance policy to Felman.  As a result of the damage sustained to the

---

[2] Felman informs the Court that IRI may no longer exist.  *Pl.'s Resp.*, Doc. #464, at 6, n.1. Regardless, the Court will refer to the defendants as IRI throughout this Opinion.

furnace and the resulting interruption to the plant's production, Felman filed an insurance claim under this policy seeking an estimated $39 million, including a $38 million business interruption claim stemming from the eight months it took to repair Furnace #2.  The specifics of the coverage provided under the policy are irrelevant to the motion currently before the Court; what is relevant is IRI investigated the claim for a full year, and still refused to settle the claim.  As a result of the delay in settlement, Felman filed the instant action seeking payment under the insurance policy in addition to other damages.

From the beginning, IRI had doubts as to the veracity of the business interruption claim, and this has remained a hotly contested issue in this action.  Following extensive discovery, IRI amended its answer to include a counterclaim for fraud.  IRI based this claim on multiple documents uncovered during the discovery period that included communication between Felman and Privat Intertrading ("Privat" or "PIT")[3] discussing the possibility of backdating contract orders and other efforts in order to bolster Felman's business interruption claim.  Several discovery disputes in this action are the progeny of Privat's connection to Felman's insurance claim at issue in this case.

---

[3] Privat is a Ukrainian entity that is intimately related to Felman and its operations.  Felman is 100% owned by Haftseek Investments Limited, which is 100% owned by Divot Enterprises, Ltd., the stock of which is 100% owned by Igor Kolomoiskiy. *Aug. 19, 2010 Mem. Op. & Order*, Doc. #398, at 4.  He is one of three shareholders of Privat Bank, and one of the Privat representatives whose relevant documents play a critical role in this motion for sanctions.  *Id.* at 11.  As Judge Stanley summarized, based on this corporate structure, "Privat, Privat Intertrading and the Ukrainians who own all that stock" will be the recipients of any settlement of the insurance claim. *Dec. 8, 2010 Mots. Hr'g Tr.*, Ex. A, Tab 5 to *Defs.' Mot. for Sanctions*, Doc. #451-2, at 48.  Therefore, Privat and Felman are closely intertwined, and Privat's role operating and decision-making for Felman is highly relevant to this action.

B.    **Overview of the Discovery Period**

IRI contends that Felman has abused the discovery process, resulting in severe prejudice to

IRI's ability to raise defenses to Felman's claims and to support its counterclaims against Felman.

The abuses range from the minor, such as delaying responses to discovery requests, to the major,

including the spoliation of relevant evidence.   A review of Judge Stanley's orders, deposition

testimony, discovery responses by both parties, and other documentation supports IRI's contention

that Felman has failed to fulfill its discovery obligations pursuant to the Federal Rules of Civil

Procedure.   Since Felman first anticipated this litigation on May 28, 2008,[4] it has delayed issuance

of litigation hold memos, and completely failed to issue holds to certain key individuals; delayed

its production of electronically stored information ("ESI"); violated this Court's Protective Order

by marking every single page of its ESI production "**CONFIDENTIAL**"; produced an excessive

number of irrelevant documents; failed to fully respond to interrogatories; misled IRI and this Court

in its interrogatory answers; filed a motion to reconsider found by this Court to not be "substantially

justified"; exhibited a lack of candor with both IRI and this Court; and, as a result of the delay in or

failure to issue the litigation holds, permanently destroyed evidence material to this case.

In its motion for terminating sanctions, IRI focuses on the most recent failure of Felman to

comply with its discovery responsibilities.   Magistrate Judge Stanley issued two orders in August

and October of 2010 requiring Felman to produce documents held by identified custodians who are

part of Privat, located in the Ukraine.   IRI sought these documents as Privat has been identified as

the controlling entity with respect to all decisions relating to Felman during the relevant time period

---

[4] Felman asserted work product protection for materials created by a non-testifying expert
as early as this date. *Defs.' Mem. of Law*, Doc. #452, at 17.

of the furnace failure and the filing of the insurance claim.  Although directed by Judge Stanley to produce any relevant documents in the hands of these individuals, Felman produced a limited number and, further, reported that several of these custodians had deleted many of the relevant documents.  Before examining Felman's failure to comply with these Orders, it is helpful to review the history that led to this most recent failure by Felman to comply with its discovery obligations.

From the beginning through the present, the parties' interactions during the discovery period have been contentious.  From October 14, 2009, the date of the first discovery related-motion, until the end of 2010, the parties filed approximately thirteen motions regarding the opposing party's failure to comply with discovery requests.[5]  One of these, IRI's motion to compel ESI, can be viewed as the first inclination of Felman's disregard for the discovery process.  In this motion, IRI sought the production of ESI responsive to its first request for production, which was filed on August 7, 2009. *Defs.' Mot. to Compel ESI*, Doc. #86, at 1.  Over three months later, Felman had yet to produce a single ESI document in response to the request for production. *Id.* Then-Magistrate Judge Taylor granted IRI's motion—but not the accompanying motion for sanctions—requiring Felman to produce responsive ESI by December 31, 2009.[6]

Felman eventually produced over one million pages, which it provided to IRI from December 2009 through January 2010. *Defs.' Mot. to Compel to Identify by Bates Number*, Doc. #197, at 1.  However, of these documents, approximately thirty to forty percent were completely irrelevant to

---

[5] The Court notes that not all the discovery motions were filed by IRI.  Felman filed a number of motions to compel IRI to fully respond to various discovery requests, some of which were granted. *See, e.g.*, *Mar. 25, 2010 Order*, Doc. #296.  However, these do not arise to the egregious level of behavior exhibited by Felman.

[6] This date was later extended into January 2010 at Felman's request.

this case.  In addition, Felman stamped each and every page, including the irrelevant documents, as

"**CONFIDENTIAL.**"  Among examples of irrelevant—and clearly non-confidential—documents

are a picture of kitten, a picture of apparently naked men, advertisements, vacation arrangements,

and spam.  *Mar. 25, 2010 Mem. Op. & Order*, Doc. #297, at 1 n.1.  In her Order sanctioning Felman,

Judge Stanley observed:

> that Felman's marking of each page of discovery
> documents as "Confidential" violates this Court's
> Local Rule 26.4 and makes a mockery of the Court's
> form protective order [used by the parties in this
> action].    It is apparent that Felman cannot
> demonstrate with specificity that the documents
> qualify for protection under FR Civ P 26(c) and that
> good cause exists for restricting dissemination
> because harm would result from their disclosure.  The
> Court further FINDS that Felman failed to proceed in
> good faith when it marked all the documents or other
> materials as "Confidential."

*Id.* at 4.[7]

The Protective Order requires the parties to mark as confidential only those documents that

"a party has a good faith belief" were confidential.  *Protective Order*, Doc. #24.  Felman's belief,

that stamping all pages of the document production as "**CONFIDENTIAL**" was appropriate, is

therefore especially disturbing.  No competent attorney could entertain a "good faith belief" that

either a picture of a kitten in a shoe or a picture of apparently naked men in cowboy hats are

confidential.  In light of Felman's abuse of the Protective Order, Judge Stanley found that Felman

---

[7] Judge Stanley further observed that in signing the Protective Order in this action, local counsel certified "that the Protective Order was not 'being presented for any improper purpose'" and that, by signing discovery responses, counsel certified that the responses comported with the requirements of the Federal Rules of Civil Procedure.  *Mar. 25, 2010 Mem. Op. & Order*, Doc. #297, at 5–6.

-6-

violated the Protective Order and Local Rule 26.4 by marking each page of its ESI production as

"**CONFIDENTIAL.**"[8] Judge Stanley sanctioned Felman for these violations, but limited sanctions

to the reimbursement of "the defendants' reasonable expenses, including attorneys' fees relating to"

IRI's motion to compel Felman to identify by Bates number. *Apr. 9, 2010 Order*, Doc. #319, at 4.

These amounted to a total of $25,000.[9] *June 25, 2010 Order*, Doc. #357, at 4.

Felman's utter disregard for good faith with respect to discovery responses is further

exemplified by IRI's motion to compel an answer to its Interrogatory No. 1 (Doc. #176).  In

Interrogatory No. 1, IRI sought information regarding Furnace No. 2—the furnace at the center of

this action—and Felman's efforts to replace or repair it.  This information already had been

identified by then-Magistrate Judge Taylor as discoverable, yet Felman nonetheless refused to

produce the information. *Feb. 24, 2010 Mem. Op. & Order*, Doc. #223, at 3.  Further, prior to filing

the motion, IRI met and conferred with Felman in hopes of avoiding the Court's involvement in their

dispute.  Accordingly, Magistrate Judge Stanley concluded that Felman's refusal to provide the

requested information "was not substantially justified" and therefore granted IRI reasonable

expenses incurred in making the motion.[10]  *Id.*  Within a one month span Felman was sanctioned

---

[8] Local Rule 26.4(a) requires a party to "demonstrate with specificity that (1) the information qualifies for protection under FR Civ P 26(c) and (2) good cause exists for restricting dissemination on the ground that harm would result from its disclosure" when seeking the entry of a protective order.

[9] Felman challenged this conclusion by Judge Stanley.  This Court concurred with Judge Stanley's Order, and ordered Felman to pay the full $25,000.  *July 15, 2010 Order*, Doc. #370.

[10] In a further waste of the parties' and the Court's resources, Felman filed a motion to reconsider.  Judge Stanley denied this motion, concluding there was "no purpose or function [to] the motion to reconsider and considers it to have been a waste of resources." *Mar. 30, 2010 Order*, Doc. #304, at 7–8.  Accordingly, she yet again required Felman pay IRI's reasonable costs for opposing the motion.  *Id.* at 8.  Felman was ordered to pay IRI's counsel a total of $7,716.75 for costs
(continued...)

twice for its failure to comport itself within the guidelines of the Federal Rules of Civil Procedure—once for a violation of its good faith obligation under the Protective Order.[11]

At the same time Felman was dragging its feet and failing to properly respond to discovery requests, Felman also actively concealed its relationship with Privat. Throughout most of this case, Felman has insisted that it was the sole decision-maker with respect to the insurance claim. However, through inadvertent production by Felman, IRI obtained a May 14, 2008, email between the Human Resource Manager at Felman, attorneys at Marks Sokolov & Burd, LLC (outside counsel to Felman), and Katerina Vatutina of PIT.[12] *May 18, 2010 Order*, Doc. #334, at 2. On the basis of this email, on March 11, 2010, IRI amended its Answer to include a fraud counterclaim. *Mot. to Amend Answer*, Doc. #265. Felman sought to claw-back this document as privileged; it was one of approximately 377 attorney-client communications that Felman inadvertently produced and subsequently claimed as privileged. *May 18, 2010 Order*, Doc. #334, at 6, 25. In the ensuing dispute regarding whether IRI was obligated to return all copies of the email,[13] Felman sought to

---

[10](...continued)
associated with these two motions. *Apr. 9, 2010 Order*, Doc. #319, at 13.

[11] Felman may have withheld additional requested information. IRI has requested Felman's 2008 tax return since August 2009, but Felman's counsel has informed IRI that Felman has yet to file its 2008 tax return. However, Felman's CFO testified during his deposition that he believes it has filed this return. *Defs.' Reply*, Doc. #471, at 19–20.

[12] In this email, the Felman Human Resources Manager wrote attorneys at Marks, Sokolov & Burd, Felman's outside counsel advising the company with respect to the insurance claims. Among other issues, the email discussed Felman's discussions with its customers about possibly backdating sales contracts. *May 14, 2008 E-mail*, Ex. E to *Defs.' Mot. for Sanctions*, Doc. #451-6.

[13] Judge Stanley ultimately concluded that "Felman and Venable [Felman's counsel] did not take reasonable steps to prevent disclosure of the May 14 email, that Felman and Venable have not satisfied all three subsections of Rule 502(b) [of the Federal Rules of Evidence], and that they have waived protection for the May 14 email." *May 18, 2010 Order*, Doc. #334, at 26. Felman requested
(continued...)

assert attorney-client privilege over the email.  Felman therefore submitted several affidavits from

Mr. Burd, one of the attorneys at Marks Sokolov & Burd, and one from Ms. Vatutina, both

indicating "that in 2007 and 2008, Felman was managed by Privat Intertrading, which oversaw

Felman's operations, including sales of Felman's silicomanganese product."[14]  *Id.* at 16.

Prior to this admission, Felman had failed to disclose that PIT was the controlling entity,

dictating the major operational decisions for Felman during the relevant time period leading to this

case.  Demonstrating an extreme lack of candor with IRI and this Court, in verified interrogatory

responses, Felman stated that "there are no individuals from the Privat Group that have first-hand

knowledge of any facts pertaining to Felman's Claim."  *Pl.'s 2d. Am. Answers to IRI's Interrogs.*,

*Resp. No. 17*, Ex. A, Tab 2 to *Defs.' Mot. for Sanctions*, Doc. #451-2.[15]  Felman also indicated that

no one outside of Felman had any role in the development of Felman's business plans.  *Id.*, *Resp.*

*No. 12*.  Both these assertions have been refuted by multiple documents obtained by IRI through

discovery.  *See, e.g.*, Ex. A, Tabs 3, 31, 32, Exs. E, F, J to *Defs.' Mot. for Sanctions*, Doc. #451-2.

_____

[13](...continued)
that this Court review Judge Stanley's decision; it did, and affirmed her conclusion.  *July 23, 2010*
*Mem. Op. & Order*, Doc. #376.

[14] Felman later attempted to discount this assertion in order to avoid production of documents
held by key Privat individuals who are custodians of documents relevant to this case.  In spite of
asserting, several times, that Privat was closely related to Felman and therefore the inclusion of
individuals like Ms. Vatutina on communications did not destroy privilege, Felman later claimed
it did not have control over Privat documents.  This is just one example of how Felman has altered
its story based on what was most convenient to its purposes at the time.

[15] According to the docket sheet, the second amended answers were filed on October 23,
2009.  *Certificate of Service*, Doc. #63.  IRI's request for interrogatories was filed on August 7,
2009.  *Certificate of Service*, Doc. #20.  Accordingly, Felman has been actively working to conceal
Privat's role in the insurance claim since at least these dates.  This is a year prior to the sale of
Privat's computers and the permanent destruction of potentially responsive ESI.  *See infra*.  It is also
a year prior to the date Felman *finally* issued a litigation hold memo to Privat employees—even
more startling, this litigation hold only went to *two* of the nine relevant Privat individuals.

Despite clear evidence to the contrary, as late as May 12, 2010, counsel for Felman asserted that "[w]hen we answered the interrogatories that nobody at Privat had firsthand knowledge with regard to the claims related to the insurance coverage issue, that's a hundred percent correct." *May 12, 2010 Transcript*, Ex. A, Tab 6 to *Defs.' Mot. for Sanctions*, Doc. #451-2, at 31–32.

Despite Felman's subterfuge, IRI uncovered the existence of PIT, the key individuals working at PIT, and the extent of PIT's control over the Felman operation—but only by weeding through the aforementioned document dump of one million-plus pages and other document productions. *See, e.g.*, E-mail from A. Kuharuk, PIT, to S. Pragnell, Felman, Aug. 7, 2008, Ex. A, Tab 3, to *Defs.' Mot. for Sanctions*, Doc. #451-2 (". . . decisions concerning distribution and expending money [regarding Felman] will be taken in Ukraine [at PIT]."). On the basis of the extensive documentation uncovered through its discovery efforts, IRI submitted a motion to compel Felman to produce documents from ten Privat representatives[16] (Doc. #372). Judge Stanley found that the evidence pieced together by IRI supported the motion for nine out of the ten PIT representatives and, therefore, ordered Felman to produce all relevant documents maintained by these individuals.[17] *Aug. 19, 2010 Order*, Doc. #398, at 15, 20–21. In reaching this conclusion, Judge Stanley found that the exhibits submitted by IRI

> establish that direct control over Felman's operations
> was exercised by the Privat representatives . . . . The

_____

[16] The Court uses the term "Privat representatives" as it was defined in the August 19, 2010 Order. Doc. #398. This includes the following individuals: Katerina Vatutina, Sergiy Maximenko, Anastasiya Kuharuk, Gennadiy Bogolyubov, Igor Kolomoiskiy, Alexey Martynov, Mordechai Korf, Velvel Lozynskyy, and Robert Powell.

[17] Again, Felman filed a motion to reconsider this Order, here with respect to two of the nine representatives. And again, Judge Stanley declined this request. *See Oct. 19, 2010 Order*, Doc. #415.

> Privat representatives were intimately involved in
> decisions regarding sales and pricing of Felman's
> production, thereby directly affecting Felman's
> business interruption claim and net profits; Messrs.
> Korf and Powell [two PIT associated custodians] are
> significantly involved in this insurance litigation.
> After review of these exhibits, it is troubling indeed
> that Defendants advise that in verified discovery
> responses, Felman has stated that "there are no
> individuals from the Privat Group that have first-hand
> knowledge of any facts pertaining to Felman's
> Claim."

*Id.* at 15–16 (internal citation omitted).

In spite of its already troubling record with respect to discovery candor and responsiveness, Felman nevertheless has failed to fully comply with Judge Stanley's August 19, 2010 Order, and her subsequent October 19, 2010 Order denying Felman's motion to reconsider. It is this most recent failure that led to IRI's filing of the instant motion.

**C.**   **Felman's Failure to Comply with the August 19 and October 19, 2010 Orders**

In the August 19 and October 19, 2010 Orders, Judge Stanley directed Felman to obtain all relevant documents from nine Privat representatives. In so doing, she observed: "While it is highly likely that the Privat representatives will produce documents and ESI which are duplicates of previously produced materials, it is reasonable to believe that they will have additional, highly relevant materials concerning Felman and its insurance claim, which were not shared with Felman executives." *Aug. 19, 2010 Order*, Doc. #398, at 25. Further, Judge Stanley made the explicit finding that each of the nine Privat representatives "***are*** custodians of documents which are relevant to the claims and defenses of the parties in this action." *Id.* at 15 (emphasis added).

In spite of this clear language, Felman failed to collect responsive documents from all the representatives. Instead, Felman conducted custodial interviews in order to ascertain whether these

-11-

individuals had any responsive documents.  *Nov. 24, 2010 Letter*, Ex. A, Tab 23 to *Defs.' Mot. for Sanctions*, Doc. #451-2.  It concluded, in direct conflict with Judge Stanley's Orders,[18] that two of the identified custodians, Mr. Bogolyubov and Mr. Kolomoiskiy,[19] did not have responsive documents on the basis of these interviews; it included the same with respect to Mr. Martynov without even conducting an interview.[20]  *Id.*  Felman determined that there was "no reasonable likelihood that either Mr. Bogolyubov or Mr. Kolomoiskiy ha[d] potentially responsive information, particularly any responsive information that has not already been produced in this case."[21]  *Larkin Aff.*, Ex. A, Tab 9, to *Defs.' Mot. for Sanctions*, Doc. #452-1, ¶ 6.  Mr. Larkin based these conclusions on representations made by these individuals that they only received Felman reports

---

[18] As observed by Judge Stanley at the December 8, 2010 status conference: "I didn't tell you to go interview them and ask them if they had anything; I said, 'I find that they have it.'" *Dec. 8, 2010 Hr'g Tr.*, Ex. A, Tab 5 to *Defs.' Mot. for Sanctions*, Doc. #451-2, at 45.

[19] The Court is astounded that Felman believed custodial interview of these two individuals was appropriate.  Felman filed a motion to reconsider regarding these two individuals, which Judge Stanley denied in her October 19 Order.  *Defs.' Mem. of Law*, Doc. #452, at 8.  Therefore, Felman reached this decision in spite of ***two*** direct orders from Judge Stanley stating that Mr. Kolomoiskiy and Mr. Bogolyubov were custodians of documents material to this case.

[20] Apparently Mr. Martynov was unreachable at the time as he was in the United Arab Emirates.  *Nov. 24, 2010 Letter*, Ex. A, Tab 23 to *Defs.' Mot. for Sanctions*, Doc. #451-2.

[21] The Court refers to Mr. Larkin, counsel for Felman, throughout this section as his affidavit contains significant assertions relating to Felman's compliance with the August 19, 2010 Order.  However, the Court notes that many of these statements are based on representations made by various Privat representatives.  Judge Stanley has previously observed that "the Court has become increasingly skeptical of these gentlemen [at Privat] and the credibility of their statements.  And, in fact, the intervening complaint filed by Mt. Hawley raised questions about the credibility of executives at Felman.  And the discovery problems that we've had in this case have not helped that matter at all."  *Dec. 8, 2010 Mots. Hr'g Tr.*, Ex. A, Tab 5 to *Defs.' Mot. for Sanctions*, Doc. #451-2, at 25.

orally, and neither read or sent emails.[22]  *Id.*  Further, Mr. Larkin was unable to reach Mr. Martynov, and concluded—even without an interview—that he had no responsive documents.[23]  *Id.* ¶ 5. Following the December 2010 hearing at which Judge Stanley expressed her displeasure with Felman's efforts to comply with her August 19 and October 19, 2010 Orders, Felman revisited these three custodians, and it has now completed a physical search of all their files.[24]  *Decl. of G. Caouette*, Ex. H to *Pl.'s Resp.*, Doc. #464-8.  Felman stated that this "unduly burdensome effort [which] costs tens of thousands of additional dollars in travel expenses and attorney time . . . yielded a total of seven new Felman-related documents, none of which contains information material to this case."[25]  *Pl.'s Resp.*, Doc. #464, at 14.

_____

[22] Felman also submitted an affidavit by Mordechai Korf in an effort to excuse their failure to search these individuals' files.  Mr. Korf stated that he only communicates orally with Mr. Molomoisky and Mr. Bogolyubov regarding Felman; however, Mr. Korf was not associated with Felman during the relevant periods to this case—in 2008 and early 2009—and accordingly, Judge Stanley found the affidavit "utterly unpersuasive."  *Dec. 8, 2010 Mots. Hr'g Tr.*, Ex. A, Tab 5, to *Defs.' Mot. for Sanctions*, Doc. #451-2, at 6, 9 ("Mr. Korf obviously lacks personal knowledge of what Mr. Bogolyubov and Mr. Maximenko and Mr. Pragnell were doing the year before he arrived on the scene.").

[23] Felman states that it misunderstood Judge Stanley's Orders.  Rather than reading the August 19 and October 19 Orders as requiring a physical search of each custodian's hard copy and electronic files, Felman interpreted the Order as a directive to conduct its usual review of potential custodians' files.  *Pl.'s Reply*, Doc. #464, at 12–13.

[24] IRI also challenges the search parameters used by Felman in searching the Privat custodians' files.  According to Mr. Caoulette's declaration, an employee of Felman's vendor, Kroll on Track, the computers of Messrs. Kolomoiskiy, Bogolyubov, and Martynov's were searched for the word "Felman."  *Decl. of G. Cauolette*, Ex. H to *Pl.'s Resp.*, Doc. #464-8, ¶¶ 8, 11, 13.  IRI asserts that a search based solely on the word "Felman" will miss key documents, and it is not aimed at getting all documents responsive to IRI's requests.  *See Defs.' Reply*, Doc. #471, at 5.  IRI points to several key documents in this case which do not contained the word "Felman."  *See* Ex. A to *Defs.' Reply*, Doc. #471-1.

[25] The Court notes that if Felman had properly fulfilled its obligations under the August 19 and October 19 Orders, the extent of the additional expense would have been much less as Felman

(continued...)

In addition to informing IRI and the Court that it had elected to forego reviewing the documents and ESI maintained by these three custodians, Felman also informed the Court and IRI that two of the remaining six custodians—Mr. Maximenko and Ms. Kuharuk—had deleted Felman-related materials.[26] *Nov. 24, 2010 Letter*, Ex. A, Tab 23 to *Defs.' Mot. for Sanctions*, Doc. #451-2. According to Mr. Larkin's affidavit, deletions of potentially responsive ESI by PIT custodians Mr. Maximenko and Ms. Kuharuk "occurred either before the filing of this lawsuit, or at the latest, prior to the filing of Defendants' counterclaims" and the deletions were merely administrative and unrelated to the instant action.[27] *Larkin Aff.*, Ex A., Tab 9 to *Defs.' Mot. for Sanctions*, Doc. #451-2, ¶ 10.

No documents whatsoever were produced from Ms. Kuharuk as she deleted all Felman-related emails a month or two after being transferred to a different department within PIT in around

---

[25](...continued)
would not have had to travel overseas for a second time.  Nonetheless, the Court does recognize that Felman did attempt to comply with Judge Stanley's Orders—albeit, several months late and only after being reprimanded by the Court.

[26] In spite of the foregoing, Felman did produce documents in response to the August and October Orders.  According to IRI, Felman produced 17,455 documents between November 12 to 23, 2010; however, "only 219 came from Ukrainian custodians and there were no internal Privat communications." *Defs.' Mem. of Law*, Doc. #452, at 3.

[27] Mr. Larkin attempts to downplay the severity of the spoliation by stating that "no materially new or different information was lost because the same or similar information appears in the documents already produced to Defendants in this case." *Larkin Aff.*, Ex A., Tab 9 to *Defs.' Mot. for Sanctions*, Doc. #451-2, ¶ 10.  This is a self-serving statement that cannot be proven or disproved as any supporting or contradicting evidence clearly has been destroyed.  Further, Judge Stanley specifically addressed this possibility in her August 19 Order, finding that while documents obtained could be highly duplicative, the Privat representatives also would be likely holders of previously undiscovered relevant documents.

April to June of 2009.[28]  *Id.* ¶¶ 10–11.  Mr. Larkin posits that no documents are new or different than

those already produced.  He bases this supposition on Ms. Kuharuk's representation that while she

created reports related to Felman, these reports were provided to Ms. Vatutina and Mr. Maximenko,

often times orally.  *Id.*  Further, Mr. Larkin contends that as she communicated with a number of

other people at PIT, these communications are therefore preserved elsewhere.  *Id.*

In February 2011, Felman reported that in addition to these two custodians, Ms. Vatutina and

Mr. Bogolyubov also deleted Felman-related documents.  Ms. Vatutina[29] destroyed hard copy files

of Felman-related documents approximately "six months after completion of PIT's work on the

Felman project in early 2009."  *Aff. of K. Vatutina*, Ex. D to *Pl.'s Resp.*, Doc. #464-4, ¶ 7.

Subsequent to this revelation, on March 3, 2011,[30] Felman informed IRI that in its production of

---

[28] This is well after the date Felman stated it anticipated litigation, in May 28, 2008.  *Def.'s Mem. of Law* at 17.  While Felman argues that it did not anticipate that PIT materials would be found relevant to this case or that Felman had control over these documents, these arguments only exist because Felman concealed the existence of PIT and its role in the decision-making with respect to the insurance claim.  Felman should not benefit from its subterfuge; the delay in the PIT custodian production is of its own creation.

[29] Felman previously had reported to the Court that Ms. Vatutina had not deleted any Felman-related material.  Instead, it asserted in open Court that the limited amount of documents produced was a result of Felman's deduplication of the production.  *Dec. 8, 2010 Hr'g Tr.*, Ex. A to *Defs.' Mot. to Supplement*, Doc. #480-1, at 54–55.

[30] March 3, 2011 is after the briefing on the motion for sanctions closed.  Accordingly, IRI moved to supplement its briefing in order to include this new information.  Felman argues IRI is precluded based on a single sentence it had included in its response, which states: "Felman's further investigation suggests, however, that few documents were removed as duplicates."  *Pl.'s Resp. to Defs.' Mot. to Supplement*, Doc. #488, at 4.  Further, Felman contends that its statements during the December 8, 2010 hearing were based on a good faith belief that the deduplication was the reason for the limited production from Ms. Vatutina.  *Id.*  Regardless of Felman's basis for its statements during the December hearing, the Court concludes that the information provided to IRI by Felman on March 3, 2011 is relevant and is new information that goes to the grounds for IRI's motion for sanctions.  Accordingly, the Court **GRANTS** IRI's motion for leave to supplement.

documents obtained from Ms. Vatutina's files, it only deduplicated[31] seven documents.[32]  Felman

previously had produced "several thousand emails" between Ms. Vatutina and individuals at Felman

located in Felman's own records, yet Felman only produced approximately 150 documents—in

addition to the seven deduplicated—from Ms. Vatutina's PIT files.  *Dec. 8, 2010 Hr'g Tr.*, Ex. A

to *Defs.' Mot. to Supplement*, Doc. #480-1, at 37.   Given the large disparity between the

Vatutina/Felman communications previously produced and the lack of documents uncovered in the

Privat files, the logical conclusion is that the spoliation of relevant evidence is larger than Felman

initially reported.  Ms. Vatutina played a significant role in Privat's oversight of Felman; she was

responsible for drafting reports for other Privat individuals, including Mr. Maximenko.  *Dep. of K.*

*Vatutina*, Ex. A. to *Defs.' Reply in Support of Mot. to Supplement*, Doc. #489-1, at 60, 115–16;

*Vatutina Decl.*, Ex. B, Doc. #489-2, at ¶ 5.  None of these internally distributed documents authored

by Ms. Vatutina from Privat have been produced.  *Defs.' Reply in Support of Mot. to Supplement*,

Doc. #489, at 4–5.  As to Mr. Bogolyubov, his email account produced an error message, indicating

it was "closed due to non-use, its contents (letters, folders, addresses, settings) were deleted in

accordance with the conditions of the user's agreement.  If you wish to continue to use it, press

unblock."[33] *Feb. 15, 2011 Letter enclosing error message*, Ex. C. to *Defs.' Reply*, Doc. #471-3.

---

[31] This refers to the process by which "Felman initially limited its production of documents collected from [PIT] to documents that Felman had not previously disclosed from its own files." *Pl.'s Resp. to Defs.' Mot. to Supplement*, Doc. # 488, at 1, n.1.

[32] Felman previously had indicated to the Court that the deduplication of Ms. Vatutina's files had resulted in the small number of documents produced.  *See supra*, n.28.

[33] IRI reports that "[t]he customer service materials for mail.ru indicate that messages can be deleted upon 60 days of nonuse of the account, but that an individual may reactive his or her account.  Felman has not stated whether it took any steps to try to recover this material or reactive the account." *Defs.' Reply*, Doc. #471, at 8, n.6.

Further, during the entire time it was uncovering the spoliation of evidence and conducting its "custodial interviews"—to reemphasize, in direct conflict with Judge Stanley's direction—Felman failed to communicate these salient facts to IRI until November 24, 2010, when it informed the Court and IRI regarding its failure to comply with the Orders. *Nov. 24, 2010 Letter from E. Larkin to J. Chin & J. Warring*, Ex. A, Tab 23 to *Defs.' Mot. for Sanctions*, Doc. #451-2. Judge Stanley, when addressing the August 19, 2010 Order during a September 15, 2010 hearing, requested "the parties discuss with each other the issues that they have with respect to documents as they come up." *Sept. 15, 2010 Mots. Hr'g Tr.*, Ex. A, Tab 27 to *Defs.' Mot. for Sanctions*, Doc. #451-2, at 16. During this period, Felman represented that it was undertaking efforts to comply with the August 19 Order, and, according to IRI, did not disclose that "it had chosen not to collect documents as ordered or that documents had been deleted." *Def.'s Mem. of Law*, Doc. #452, at 3.

Felman's failure to comply with Judge Stanley's August 19 and October 19, 2010 Orders was inevitable in light of the lack of care Felman exercised. Felman initially anticipated litigation against IRI on or about May 28, 2008,[34] and filed this action on May 1, 2009. Yet, Felman failed to provide timely litigation hold memos to either the PIT representatives and Felman employees located at the West Virginia plant. Felman did not provide litigation hold memos to the West Virginia Felman staff until four months after this case was filed. *Defs.' Reply*, Doc. #471, at 2; Ex. G to *Defs.' Mot. for Sanctions*, Doc. #451-8. Felman also admitted that the Ukrainian custodians were not instructed to preserve their documents and that Mr. Maximenko and Ms. Vatutina were only provided litigation hold memos on August 10, 2010—one day prior to the hearing on IRI's

---

[34] Felman claimed work-product Protective over work done by a Dr. Kusic, who was retained on May 28, 2008 as a non-testifying consultant in relation to Felman's insurance claim with IRI. *Defs.' Mem. of Law*, Doc. #452, at 17.

motion to compel their documents, and almost a month after IRI filed its motion to compel.  *Dec. 8, 2010 Mots. Hr'g Tr.*, Ex. A., Tab 5, to *Defs.' Mot. for Sanctions*, Doc. #451-2, at 54; *IRI's Mot. to Compel*, Doc. #372.  None of the other Privat custodians were ever provided litigation holds.  This occurred in spite of warnings by the Court regarding Felman's responsibility to preserve these documents.  As early as June, 2010, Magistrate Judge Stanley bluntly instructed that Maimenko and Vatutina documents, " in whatever form," be promptly turned over to Defendants.[35]   Felman's decision to disregard its obligation to issue litigation hold memos resulted in the permanent destruction of relevant Privat ESI:  PIT sold their computers in the summer of 2010[36] as part of a systems upgrade, making all information unrecoverable.  *Dec. 8, 2010 Mots. Hr'g Tr.*, Ex. A., Tab 5, to *Defs.' Mot. for Sanctions*, Doc. #451-2, at 54.

As a result of Felman's varying and extensive abuses of the discovery process, Defendants have filed the instant motion for sanctions.  Pursuant to Rule 37, Defendants seek dismissal, with prejudice, of all Plaintiff's claims.  In the alternative, at a minimum, IRI requests dismissal of Felman's business interruption and bad faith claims and that the Court issue an adverse inference instruction stating that the deleted documents and those that Felman has refused to collect from its Shareholders would have contradicted Felman's business interruption claim and supported IRI's fraud claim.  The Court will now review the legal standard governing Rule 37(b) sanctions for discovery abuses, before turning to an analysis of the merits of IRI's argument.

---

[35] Judge Stanley also cautioned Felman of its obligations to preserve these documents, stating on June 30, 2010: "I hope all those [Privat] entities have gotten good advice about preservation of documents. . . . [T]hey'll be sorry if they don't."  *June 30, 2010 Hr'g Tr.*, Ex. A, Tab 4 to *Defs.' Mot. for Sanctions*, Doc. #451-2, at 28 and 80–81.

[36] The exact date is unknown.

# II.
# LEGAL STANDARD

## A.    Standard for Default Judgment Under Rule 37(b)

Under Rule 37 of the *Federal Rules of Civil Procedure*, a party may move for sanctions where the opposing party has "fail[ed] to obey an order to provide or permit discovery . . . ." *Fed. R. Civ. P.* 37(b)(2).  Among the sanctions a party may seek is a "rendering [of] default judgment against the disobedient party." *Fed. R. Civ. P.* 37(b)(2)(vi).  A district court has discretionary power to issue sanctions pursuant to Rule 37(b), "derive[d] from the district court's 'broad inherent power to protect the administration of justice by levying sanctions in response to abusive litigation practices.'" *S. New England Tel. Co. v. Global NAPs, Inc.*, 251 F.R.D. 82, 90 (D. Conn. 2008) (quoting *Penthouse Int'l Ltd. v. Playboy Enters., Inc.*, 663 F.2d 371, 386 (2d Cir. 1981)).  It is, however, subject to certain limitations.

The Fourth Circuit states that it is a power never to be exercised "when it has been established that failure to comply has been due to inability, and not to wilfulness, bad faith, or any fault of (the non-complying party)." *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 503 (4th Cir. 1977) (quoting *Societe Internationale v. Rogers*, 357 U.S. 197, 212 (1958)).  A default judgment is the most severe sanction under Rule 37(b) as it "represents in effect 'an infringement upon a party's right to trial by jury under the seventh amendment,'" and decides a case on grounds other than the merits. *Id.* at 503–04 (quoting Note, *Standards for Imposition of Discovery Sanctions*, 27 ME. L. REV. 247, 266 (1975)).  Accordingly, a district court must be at its most cautious and its "range of discretion is more narrow" when considering a motion for default judgment. *Id.* at 503 (quoting *Fox v. Studebaker-Worthington, Inc.*, 516 F.2d 989, 993 (8th Cir. 1975)).  On the basis of these concerns, the Fourth Circuit has concluded that the severe sanction of default judgment for discovery abuses

should be reserved for only the "flagrant case in which it is demonstrated that the failure to produce materially affect(s) the substantial rights of the adverse party and is prejudicial to the presentation of his case." *Id.* at 504 (international quotations and citations omitted).

The Fourth Circuit has established a list of four factors a court must consider prior to issuing a sanction of default judgment:

> (1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice the noncompliance caused the adversary; (3) the need for deterring the particular type of noncompliance; and (4) the effectiveness of less drastic sanctions.

*Hillig v. Comm'r*, 916 F.2d 171, 174 (4th Cir. 1990) (citing *Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs.*, 872 F.2d 88, 92 (4th Cir. 1989)).  In addition, the Fourth Circuit requires that, prior to issuing default judgment sanctions, the district court must communicate the possibility of these sanctions to the offending party.  *Hathcock v. Navistar Int'l Transp. Corp.*, 53 F.3d 36, 40 (4th Cir. 1995).  Last, the Court notes that "[s]anctions must be weighed in light of the full record in the case." *S. New England Tel. Co.*, 251 F.R.D. at 95 (quoting *Penthouse Int'l Ltd.*, 663 F.2d at 388). Accordingly, "[t]o warrant dismissal, the offending party's conduct in the litigation must demonstrate a 'pattern of indifference and disrespect to the authority of the court.'" *PVD Plast Mould Indus. Ltd. v. Polymer Grp., Inc.*, 2001 WL 1867801 (D.S.C. 2001), at *4 (quoting *Mut. Fed. Sav. & Loan Ass'n*, 872 F.2d at 92).

**III.**
**DISCUSSION**

**A.     Felman's Spoliation of Material Evidence**

Defendants' motion for terminating sanctions is based on Plaintiff's discovery abuses, as a whole.  Defendants, however, do place significant weight on Plaintiff's spoliation of relevant

evidence in this case, and the resulting violation of the August 19 and October 19, 2010 Orders. Accordingly, the Court will first review the Fourth Circuit standard for terminating sanctions for spoliation, and determine whether the spoliation that occurred in this case merits default judgment on its own.

### 1.      Standard for Sanctions for Spoliation of Material Evidence

"Spoliation refers to the destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) (citing *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) (citing *Black's Law Dictionary* 1401 (6th ed. 1990))). Spoliation of evidence, like a party's disregard for a court's discovery order, gives rise to a trial court's power to issue sanctions.  "The policy underlying this inherent power of the courts is the need to preserve the integrity of the judicial process in order to retain confidence that the process works to uncover the truth." *Silvestri*, 271 F.3d at 590.  The Fourth Circuit cautions, however, that while a trial court has discretion in imposing sanctions, "dismissal should be avoided if a lesser sanction will perform the necessary function." *Id.* (citing *West*, 167 F.3d at 779).  In the Fourth Circuit, to warrant sanctions for spoliation, the following must be shown:

> "(1) [T]he party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a 'culpable state of mind;' and (3) the evidence that was destroyed or altered was 'relevant' to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it."

*Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 509 (D. Md. 2009) (quoting *Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 219 F.R.D. 93, 101 (D. Md. 2003)).  For terminating sanctions, "the district court must consider both the spoliator's conduct and the prejudice caused and be able to conclude either (1) that the spoliator's conduct was so egregious as to amount to a forfeiture of his claim, or (2) that the effect of the spoliator's conduct was so prejudicial that it substantially denied the defendant the ability to defend the claim."  *Silvestri*, 271 F.3d at 593.

### 2.    Terminating Sanctions are Not Warranted Based on Felman's Spoliation Alone

#### i.    *Duty to Preserve*

Whether spoliation of evidence occurred depends on when a party's duty to preserve material evidence arose, *i.e.*, "when a party reasonably should know that the evidence may be relevant to anticipated litigation."  *Silvestri*, 167 F.3d at 591.  A party subject to this duty must "identify, locate, and maintain, information that is relevant to specific, predictable, and identifiable litigation."  *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 522 (D. Md. 2010) (Mag.) (internal citation omitted).  In ascertaining whether a party has fulfilled its duty to preserve, a court must "determine reasonableness under the circumstances . . . . [which] 'in turn depends on whether what was done—or not done—was *proportional* to that case and consistent with clearly established applicable standards.'"  *Id.* (quoting *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 613 (S.D. Tex. 2010).  "If a party cannot fulfill this duty to preserve because he does not own or control the evidence, he still has an obligation to give the opposing party notice of access to the evidence or of the possible destruction of the evidence if the party anticipates litigation involving that evidence."  *Silvestri*, 167 F.3d at 591 (citing *Andersen v. Schwartz*, 179 Misc.2d 1001, 687 N.Y.S.2d 232, 234–35 (N.Y. Sup. Ct. 1999)).  In the Fourth Circuit, "'documents are considered to be under

a party's control when that party has the right, authority, or practical ability to obtain the documents from a non-party to the action.'" *Victor Stanley*, 269 F.R.D. at 523 (quoting *Goodman*, 632 F. Supp. 2d at 515).

Felman claimed work-product Protective for material produced as early as May 28, 2008, when Felman retained Dr. Kusic, a non-testifying expert. *Defs.' Mem. of Law*, Doc. #452, at 17. Felman stated that it retained Dr. Kusic as it anticipated that litigation might be necessary in order to receive payment on the insurance claim. *Id.* at 17, n.26. Accordingly, Felman's duty to preserve relevant evidence arose no later than that date. Judge Stanley, in her August 19, 2010 Order, concluded that Felman did, in fact, have control over the Privat documents. Further, in light of the extensive control exercised by Privat over Felman operations and, more importantly, the insurance claim, Judge Stanley concluded that these materials were relevant. The Court agrees with both these conclusions. Based on the foregoing, Felman had a duty to preserve the files of the Privat representatives.

Felman, however, attempts to convince the Court that "it was not unreasonable for Felman to believe before August 2010 that it did not have legal control over the PIT documents."[37] *Pl.'s Resp.*, Doc. #464, at 25. At the time the suit was filed, the consulting relationship between Privat, a Ukrainian organization, and Felman, a Delaware corporation, had ended. Further, while the relationship was ongoing, Privat was the entity that exhibited control over Felman, and not the other way around. While these statements may be true, this argument has no merit.

---

[37] The claim that it was unaware that it had control over Privat's documents is troubling as the end recipients of any money paid under the IRI insurance policy are the Privat shareholders, who are the ultimate, indirect owners of Felman. *Dec. 8, 2010 Mots. Hr'g Tr.*, Ex. A, Tab 5 to *Defs.' Mot. for Sanctions*, Doc. #451-2, at 48.

Marks, Sokolov & Burd, the firm currently representing the Privat individuals in this action, is outside corporate counsel for Felman. *Aff. of G. Burd*, Doc. #323-5, ¶ 3. This is also the firm that communicated with both Felman and Privat individuals while aiding Felman with the insurance claim that is the subject of this action. *Dep. of S. Protashchuk*, Ex. E to *Defs.' Reply*, Doc. #471-5, at 168. Mr. Burd has stated that during the relevant time period, Felman was managed by PIT personnel.[38] The date Felman first anticipated litigation, May 28, 2008, falls within the time period in which Privat controlled Felman's operations. Further, as IRI points out, "Felman has claimed work-product Protective and attorney-client privilege over documents to and from Ms. Vatutina, Ms. Kuharuk, Mr. Maximenko, and Mr. Bogolyubov dated well before they deleted their documents." *Defs.' Reply*, Doc. #471, at 10–11 (citing supporting documentation).

Felman cannot have it both ways. Either the duty to preserve arose on May 28, 2008, or work product protection does not apply to Dr. Kusic's materials. Either Felman and Privat are wholly separate entities, or the communications between Felman, its counsel, and Privat are still protected under attorney-client privilege. The Court finds particularly relevant that Felman's counsel was aware of the extent of Privat's involvement in decisions relevant to Felman's insurance claim. Marks Sokolov & Burd was involved in the preparation of the insurance claim, and communicated with both Felman and Privat representatives during this time period. Felman and Privat were significantly intertwined during the relevant time period and, as Judge Stanley concluded in her August 19 Order, Felman had, at a minimum, a "practical ability to obtain the

---

[38] "Privat regularly oversaw Felman's operations and participated in key decisions regarding those operations, including decisions regarding sales of Felman's silicomanganese product. . . . Ms. Vatutina on behalf of Privat was charged with overseeing Felman's operations." *Aff. of G. Burd*, Doc. #323-5, ¶¶ 3–5.

-24-

documents" from Privat.  *Victor Stanley*, 269 F.R.D. at 523 (quoting *Goodman*, 632 F. Supp. 2d at 515).

Further, it was not an unreasonable or disproportional effort for Felman to issue a litigation hold to the key Privat players.  Felman's outside counsel was in communication with the key Privat individuals and could have issued a litigation hold without significant effort.  Privat's location in the Ukraine represents a minimal barrier to preserving or producing these documents.  As Judge Stanley observed: "Your clients need to understand that they chose this country to do business, and they chose this court to file a lawsuit, and they will be held to the standards of this [country] and these rules, not their culture and their rules."  *Dec. 8, 2010 Mots. Hr'g Tr.*, Ex A, Tab 5 to *Defs.' Mot. for Sanctions*, Doc. #451-2, at 50.

For the foregoing reasons, the Court **FINDS** that Felman had a duty to preserve the Privat documents that arose at the latest on May 28, 2008.

### ii.    *Culpability*

In the Fourth Circuit, "there are three possible states of mind that can satisfy the culpability requirement: bad faith/knowing destruction, gross negligence, and ordinary negligence." *Goodman*, 632 F. Supp. 2d at 518.  The level of sanctions issued against a party depends on the level of culpability. *Victor Stanley*, 269 F.R.D. at 529.  In *Victor Stanley*, Judge Grimm provides a detailed overview of the levels of culpability.  Negligence "is '[t]he failure to exercise the standard of care that a reasonably prudent person would have exercised in a similar situation[.]'" *Id.* (quoting *Black's Law Dictionary* 846 (Bryan A. Garner ed., abridged 7th ed., West 2000)).  Negligence has been found in cases where a party failed to properly preserve, collect, and review evidence, resulting in

the destruction of relevant materials.  *Id.*  In contrast, gross negligence "differs from ordinary negligence only in degree, and not in kind."  *Id.* (citations omitted).

In the instant case, the Court concludes that Felman's failure to issue litigation holds to the Privat representatives until August 2010—and then, only to two of them—constitutes gross negligence.  Felman did more than fail to meet the standard of care of a "reasonably prudent person" to preserve evidence.  Instead, Felman's failure occurred in spite of a direct warning from Judge Stanley, and only after Felman hid the relevance of the Privat representatives from IRI and the Court since at least August 2009, when IRI issued its requests for interrogatories.[39]  Outside of the fact that the duty to preserve began in May 2008, Felman had sufficient forewarning that the Privat documents were relevant to this action, yet it nonetheless failed to take critical steps to preserve this evidence.  Lastly, the damage done is permanent—Privat has now completely replaced its computer system, rendering all ESI irretrievable.  This clearly amounts to more than mere negligence.  *Id.* at 529–30 (contrasting negligence and gross negligence spoliation cases).

On the facts before it, however, the Court cannot conclude that Felman's behavior was willful or in bad faith.  To be willful, the behavior must be "intentional, purposeful, or deliberate."  *Id.* at 530.  To be in bad faith, the destruction must be "'for the purpose of depriving the adversary of the evidence.'"  *Id.* (quoting *Powell v. Town of Sharpsburg*, 591 F. Supp. 2d 814, 820 (E.D.N.C. 2008)).  There is no evidence that Privat destroyed the relevant material or permanently rendered

---

[39] The Court considers this behavior almost sufficient to find Felman's conduct to be willful. For Felman to hide the extent of the relationship of Privat to this action from IRI and the Court for, at the minimum, a year, and to fail to issue litigation holds even *after* a warning by Judge Stanley comes close to qualifying as "intentional, purposeful, or deliberate" behavior.  *Victor Stanley*, 269 F.R.D. at 530.

it unavailable by replacing all the computers in its office deliberately or in order to deprive IRI access.  Accordingly, the Court **FINDS** that Felman's behavior amounted to gross negligence.

### iii.    *Relevance of Destroyed or Altered Evidence*

"Lost or destroyed evidence is 'relevant' if 'a reasonable trier of fact could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.'" *Victor Stanley*, 269 F.R.D. at 531 (quoting *Thompson*, 219 F.R.D. at 101).  The lost relevant material must be prejudicial to the party alleging spoliation for a court to issue sanctions.  *Id.*  It is considered prejudicial if the loss of the evidence compromises "a party's ability to present its case or to defend." *Id.* at 532 (citing *Silvestri*, 271 F.3d at 593–94).  If the spoliation was willful, relevance is presumed in the Fourth Circuit.  *Id.*  As the Court has determined that the spoliation here amounts to gross negligence, IRI must establish the relevance of the lost materials and the prejudicial effect the loss of the materials had on its case.  *Id.*

There is no question whether the materials deleted by Privat were relevant.  Ms. Vatutina, during her deposition, testified that she authored hard copy reports regarding production at Felman which are no longer in existence.  *Dep. of K. Vatutina*, Ex. A to *Defs.' Reply in Supp. of Mot. to Supplement*, Doc. #489-1, at 60, 109, 115–16.  Information regarding production levels at Felman clearly goes to the veracity of Felman's business interruption claim, and is therefore highly relevant. Privat controlled Felman's pricing and other features of the business, including balancing Felman's sales with other Privat related holdings.  Moreover, much of the documentation already provided indicates that Felman suffered from an overabundance of inventory during the relevant time period in spite of the Furnace #2 failure.  *See, e.g.*, *Defs.' Reply*, Doc. #471, at 15–16 (citing reporting documentation).  The Privat managers, such as Maximenko and Vatutina, exercised considerable

-27-

oversight and were well aware of the market difficulties Felman faced.  They must have made their

own reports and communicated internally about Felman's business, if not the insurance claim itself.

Yet, many of these documents have not been produced but, instead, were permanently destroyed.

Felman has recognized that the deleted documents were relevant, stating that various custodians

have permanently deleted "Felman-related" documents.  *See, e.g.*, *Aff. of E. Larkin*, Ex. A, Tab 9,

Doc. #451-2, ¶ 11.  What is more difficult to ascertain, however, is the level of prejudice suffered

by IRI as a result of the spoliation alone.

In *Victor Stanley*, Judge Grimm provided guidance with respect to what confluence of factors

should receive a case-dispositive sanction:

> Where intentionally egregious conduct leads to
> spoliation of evidence but causes no prejudice
> because the evidence destroyed was not relevant, or
> was merely cumulative to readily available evidence,
> or because the same evidence could be obtained from
> other sources, then the integrity of the judicial system
> has been injured far less than if simple negligence
> results in the total loss of evidence essential for an
> adversary to prosecute or defend against a claim.  In
> the former instance, the appropriateness of a case-
> dispositive sanction is questionable despite the
> magnitude of the culpability, because the harm to the
> truth-finding process is slight, and lesser sanctions
> such as monetary ones will suffice.  In contrast, a
> sympathetic though negligent party whose want of
> diligence eliminates the ability of an adversary to
> prove its case may warrant case-dispositive sanctions,
> because the damage to the truth-seeking process is
> absolute.

*Victor Stanley*, 269 F.R.D. at 526.

Here, IRI has done an admirable job sifting through the discovery produced by Felman.  In

spite of Felman's efforts to dissemble Privat's relation to this litigation, IRI has uncovered multiple

documents that support its defenses and its counterclaim that Felman has attempted to fraudulently claim a $38 million business interruption claim. Accordingly, the Court only can conclude that IRI is not sufficiently prejudiced to warrant dismissal of all Plaintiff's claims based on the spoliation of the Privat documents alone. IRI's ability to prove its counterclaim has not been severely damaged by the loss of these documents alone, but the prejudice to its defense of the business interruption claim is significant. It is this latter finding that justifies a partial dismissal of Felman's claims. Further, in spite of Felman's protestations that IRI's motion is limited to the violations of the August 19 and October 19, 2010 Orders, the Court's decision to partially grant the motion for sanctions is based on Felman's discovery conduct as a whole. *See S. New England Tel. Co.*, 251 F.R.D. at 95 (quoting *Penthouse Int'l Ltd.*, 663 F.2d at 388); *PVD Plast Mould Indus. Ltd.*, 2001 WL 1867801, at *4 (quoting *Mut. Fed. Sav. & Loan Ass'n*, 872 F.2d at 92). Felman's behavior throughout the discovery period in combination with the spoliation of the Privat documents is more than sufficient for this Court to conclude that a terminating sanction is justified in this action.

## B.    Factors for Partial Dismissal Sanction

As a preliminary matter, in order to issue sanctions pursuant to Rule 37(b), a court must determine that a party has violated a court order to provide or permit discovery. As already determined by Judge Stanley, Felman violated this Court's Protective Order by making every page of its ESI production "**CONFIDENTIAL**" irrespective of the actual content of the documents. *Protective Order*, Doc. #24. In addition, in light of the extensive spoliation[40] by Privat and Felman's

---

[40] As detailed above, while the spoliation alone is not enough to warrant sanctions, combined with Felman's extensive and continuing disregard for its discovery obligations, it is more than sufficient for this Court to partially grant IRI's motion. In particular, the Court again emphasizes Felman's subterfuge in hiding the extent of the role Privat played in running Felman and organizing (continued...)

initial failure to search the files of Messrs. Martynov, Bogolyubov, and Kolomoiskiy, the Court only can conclude that Felman also violated the August 19 and October 19 Orders, thereby triggering this Court's ability to issue sanctions. Accordingly, what remains is for the Court to determine whether Felman's discovery abuses satisfy the Fourth Circuit standard for terminating sanctions. The Court is convinced that they do.

### 1. *Bad Faith*

Throughout this action, Felman has demonstrated a significant disregard for the discovery process and its duty of candor to this Court. Since discovery began in 2009, Felman repeatedly has failed to up uphold its obligations. First, Felman failed to produce its ESI pursuant to IRI's discovery request. Accordingly, IRI filed—and was granted—a motion to compel the production. Rather than complying in good faith with the Court Order, Felman chose to respond by producing over a million pages of ESI, at least thirty percent of which was irrelevant. Even more egregious, Felman also opted to abuse this Court's Protective by marking each and every page as "Confidential" in direct violation of this Court's Protective Order. This marked the first time Felman was sanctioned for its behavior, and its first direct violation of one of the Court's orders. Further, use of the Protective Order requires a "good faith belief" that the material is, in fact, confidential. *Protective Order*, Doc. #24. Felman's utter disregard for this obligation and for this Court's authority is therefore highly offensive to the "integrity of the judicial process." *Silvestri*, 167 F.3d at 590.

---

[40](...continued)
its insurance claim. Further, the Court notes the failure of Felman to issue hold notices to Privat representatives, even after the Court warned Felman of possible consequences for failing to do so.

In addition to dragging its feet with document production, Felman also created obstacles with respect to other discovery obligations.  In spite of the Court finding that information regarding Furnace 2 production was relevant, Felman refused to provide the information in response to IRI's First Interrogatory, even after a meet and confer with IRI.  Judge Stanley was ultimately required to issue an order compelling compliance, and she could only conclude that Felman's recalcitrance was not substantially justified, leading her to yet again sanction Felman.  Felman then had the temerity to file a motion to reconsider Judge Stanley's finding, leading to yet another sanction for wasting the Court's time and resources with a pointless motion.

Meanwhile, while failing to comply with its document production obligations and flouting this Court's authority, Felman also was exhibiting an extreme lack of candor.  In two **_verified_** interrogatory responses, Felman outright misrepresented the role of Privat with respect to Felman operations.  Further, Felman continued to maintain this misrepresentation in open court when in May 2010 its counsel stated that these interrogatories were truthful.  This ongoing subterfuge and Felman's failure to issue litigation holds resulted in the extensive spoliation of material evidence by Privat and inexcusably delayed the progression of this action.

In addition, on several occasions, Felman has made statements to cloak its failure to fully comply with its discovery obligations.  For example, during the December 2010 hearing, Felman represented that the reason for the small production from Ms. Vatutina was because a large number of documents had been deduplicated.  Clearly, counsel for Felman did not know what it was talking about.  If the production had been checked, it would have been apparent that only seven documents had been deduplicated, and that a much more likely (and ultimately proven) reason for the small production was due to the spoliation of evidence.

As discussed above, the Court concluded that Privat's failure to issue a litigation hold to all the key Privat representatives until August 2010—and at that point, only to two of the nine representatives—amounted to gross negligence, borderline willful, behavior. The Court is severely troubled by the fact that this occurred despite a direct warning from Judge Stanley on June 30, 2010, regarding potential consequences if the Privat individuals had not been instructed regarding the preservation of their documents. Despite this warning, Felman did not consider it important or necessary to issue preservation memos to these individuals until just prior to the August 19 Order. And even then, Felman nonchalantly neglected to issue the hold to the majority of these individuals. Regardless of the reason for the spoliation or delay in production relating to the August 19 and October 19 Orders, the end result is the same: Felman violated the Orders.

Felman has been recalcitrant throughout the discovery process, attempted to conceal the true facts behind its operations and Privat's controlling role, and generally neglected its duties of candor and truthfulness to this Court. Felman also has wasted this Court's time and resources, the time and resources of IRI, and has significantly delayed case proceedings. Instead of addressing the merits of Felman's claim and IRI's fraud counterclaim, this Court has instead had to deal with numerous discovery motions and disputes over more than two years of litigation. While Felman has exhibited signs of reformation in its recent attempt to respond to Judge Stanley's doubts with respect to its compliance with the August 19 and October 19 Orders, the extensive spoliation is, without a doubt, the direct result of Felman's complete failure to comply with its discovery obligations. As the Fourth Circuit has observed: "Even though the defendants may have made efforts to comply, the attempts were last-ditch and only offered when it became crystal clear that they were going to lose the case unless they did something. In the context here, the things done did not add up to an

adequate 'something.'" *Mut. Fed. Sav. & Loan Ass'n*, 872 F.2d at 94.  Taken as a whole, the Court

only can conclude that Felman has acted in bad faith.  There is no other explanation for the ongoing

discovery abuse exhibited by Felman.

### 2.    *Prejudice to IRI*

For two years, Felman has consistently indicated an utter disregard for its duty of candor to

this Court, and to the integrity of the truth-seeking process central to the judicial system.  Felman

has tried on multiple occasions to prevent IRI from uncovering the depth of Privat's involvement

in Felman's operations.  Felman provided false interrogatory responses, delayed its production of

relevant material, and completely disregarded its obligation to preserve Privat documents.  The

Court concludes that Felman's consistent effort to conceal the relevance of the Privat documents was

aimed at delaying or completely preventing IRI's access to relevant material that undermines

Felman's business interruption claim.

Felman, in addition to its lack of candor, has exhibited an egregious disregard for the good

faith that is expected in the interactions by parties during the discovery period.  The document dump

and perversion of this Court's Protective Order was prejudicial to IRI.  This resulted in yet another

delay in the discovery process, requiring additional time and expenditures by IRI to get Felman to

comply with its discovery obligations.  The delaying of discovery and the effort to conceal relevant

information also were reflected in Felman's effort to withhold responsive information regarding

Furnace 2 in response to IRI's First Interrogatory, in spite of a finding by the Court that information

was relevant to the case.

Further, Felman's discovery abuses have resulted in a delay in the case proceedings.  The

discovery deadlines were pushed back, and later suspended, in light of the "plethora of discovery

disputes." *Mar. 25, 2010 Order*, Doc. #294. Meanwhile, the parties were subject to ongoing status hearings, which likewise increased the expense required of IRI. All of this has necessitated incurring an exorbitant amount of additional expenses and attorney time by IRI. As a result of Felman's efforts to conceal the Privat role in this action, IRI had to sift through innumerable pages of discovery production to support its motion to compel the Privat documents, costing IRI an untold amount of attorney time and expense.

Yet, despite IRI's extraordinary efforts to overcome Felman's egregious discovery abuses, Felman's actions were ultimately successful. Felman's dissembling resulted in the permanent destruction of materials relevant to this case, a result prejudicial to IRI's ability to defend against Felman's insurance claim. Compounding the additional expenses Felman's abuses have caused, IRI is now faced with the possibility of having to defend its claims without full access to all relevant material. The unnecessary and substantial expense Felman's behavior has cost IRI is unduly burdensome, and it is beyond outside the realm of acceptable behavior under the Federal Rules of Civil Procedure.

The effort by Felman to conceal Privat's role, the repeated delays in the discovery period, Felman's filing of unjustified motions, Felman's document dump and abuse of the Protective Order, Felman's failure to preserve evidence, and Felman's disregard for this Court's directives and Orders, combined, have resulted in prejudice to IRI. All of Felman's actions reflect a disregard for its obligations of truthfulness and candor to this Court, and to the truth-seeking process that is central to the judicial system. *Victor Stanley*, 269 F.R.D. at 526. Accordingly, the Court **FINDS** IRI suffered significant prejudice.

### 3.    *Deterrence and Less Severe Sanctions*

-34-

The Fourth Circuit has observed that "[t]he deterrence and lesser sanctions factors are somewhat intertwined." *Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 505 (4th Cir. 1998).  Where, as here, a court has utilized lesser sanctions to achieve compliance to no avail, the need for deterrence relates to the "repeated misconduct never wholly remedied in the future." *Id.* (quoting *Mut. Fed. Sav. & Loan Ass'n*, 872 F.2d 88, 94).  The Court has sanctioned Felman on three different occasions.  Despite these multiple showings of displeasure by the Court, and in spite of several verbal warnings by the Court, Felman has exhibited an inordinate level of disrespect for its discovery obligations.  For example, in spite of Judge Stanley's warning regarding preservation of the Privat custodian's files in June 2010, Felman still failed to issue full litigation holds to all relevant Privat custodians, which were already two years overdue at that stage. In addition, rather than fully complying with the August 19 and October 19 Orders on its own, full compliance only occurred subsequent to an additional warning and expression of justifiable frustration by Judge Stanley during the December 2010 hearing.

IRI challenges even Felman's most recent performance with respect to the August 19 and October 19 Orders.  IRI questions the search terms used in the most recent document production, pointing to several documents key to IRI's fraud claim that do not contain the word "Felman", the main word utilized by Felman in its search of the Privat custodians' files.  Clearly, the prior sanctions and warnings directed at Felman have not been sufficient to ensure proper discovery conduct.  Felman has shown a "disregard for court orders that require disclosure of information directly related to claims and damages[.]" *PVD Plast Mould Industries Ltd., Inc.*, 2001 WL 1867801, at *12.  "In such cases, not only does the noncomplying party jeopardize his or her adversary's case by such indifference, but to ignore such bold challenges to the district court's power would

encourage other litigants to flirt with similar misconduct." *Mut. Fed. Sav. & Loan Ass'n*, 872 F.2d at 92. Accordingly, the Court concludes that for the purpose of future deterrence, and in light of the failure of prior less severe sanctions to achieve compliance, a partial dismissal is required in this action.

The sanctionable conduct of Felman and the resulting prejudice to Defendants merits dismissal of the business interruption claim because the unavailable evidence and improper conduct related predominantly to it. As to Defendants' counterclaim, the unavailable evidence is less prejudicial and an adverse inference instruction is an adequate remedy. Finally, Plaintiff's spoliation of evidence and overall poor conduct in the course of discovery justified Defendants' Motion. The Court finds Defendants are entitled to reasonable attorney fees for their efforts to seek a remedy for Plaintiff's conduct.

### 4.     *Notice to Felman*

Magistrate Judge Stanley warned on several different occasions that Felman could be subject to sanctions as a result of its discovery conduct. On September 15, 2010, Judge Stanley stated during a discovery-related hearing the following:

> But the dark cloud that hangs over that ruling [requiring production of documents from the Privat individuals] is the issue of sanctions. And because—my guess is, and I want to have a candid discussion about this, is that if documents and/or witnesses are not produced, then the first thing the defendants are going to do is try to dismiss the case or impose all kinds of sanctions on Felman because they haven't produced the documents and witnesses.

*Sept. 15, 2010 Mots. Hr'g Tr.*, Ex. A, Tab 27 to *Defs.' Mot. for Sanctions*, Doc. #451-2, at 24–25.[41]

She also stated the following during a December 8, 2010 motions hearing:

> Well, the defendants are going to do whatever they're
> going to do.  I don't have a motion in front of me.
> Ultimately, it may well be that this will land in Judge
> Chambers' lap, because he's going to be the one
> which will be—who will decide what gets put into
> evidence and what doesn't; whether or not the jury
> gets an instruction on adverse inference; whether he
> enters some kind of judgment or dismisses claims or
> whatever.  None of that is teed up before any judicial
> officer right now.  I am sure that you have read and
> are familiar with Judge Grimm's recent decision in
> *Victor Stanley v. Creative Pipe?* . . . 269 F.R.D. 497,
> September, 2010.  The price of not playing by the
> rules is high, and I don't have to tell you that. . . . One
> of the outstanding things that Judge Grimm does is he
> talks about the enormous burden on the court when
> we have cases that go off the track, but he also talks
> about counsel's duty of candor, preservation orders,
> litigation holds, and the incredibly complexity of
> litigating in a global economy, in an electronic global
> economy.  Your clients need to understand that they
> chose this country to do business, and they chose this
> court to file a lawsuit, and they will be held to the
> standards of this company—country and these rules,
> not their culture and their rules.

*Dec. 8, 2010 Mots. Hr'g Tr.*, Ex. A, Tab 5 to *Defs.' Mot. for Sanctions*, Doc. #451-2, at 49–50.  The

Court is uncertain how much clearer Judge Stanley could have been in putting Felman on notice of

the possibility of a motion for sanctions.

---

[41] Judge Stanley also notes that she was particularly reluctant to issue the order allowing production of the Privat documents as they were foreign witnesses and production "potentially sets up the dark cloud of sanctions if—and I guess this is one reason why I was so reluctant to rule as I did." *Sept. 15, 2010 Mots. Hr'g Tr.*, Ex. A, Tab 27 to *Defs. Mot. for Sanctions*, Doc. #451-2, at 24. Accordingly, Judge Stanley made this statement in an effort to avoid deciding this matter on the basis of sanctions for discovery abuses and, instead, decide the case on the merits. *Id.* at 25. Nevertheless, this warning by Judge Stanley was not heeded by Felman.

**IV.**
**CONCLUSION**

For the foregoing reasons, Defendants' Motion for Sanctions is **GRANTED, in part, and DENIED, in part**.  Accordingly, the business interruption claim contained in the Complaint is **DISMISSED with prejudice**.  Additionally, Defendants may file a motion for the award of attorney fees with supporting documentation and explanation, in accordance with this decision, within thirty days.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:        September 29, 2011

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

-38-